ALFRED DAVIES ET AL. v. THE CITY OF SAGINAW AND JAMES F. BROWN, TREASURER.

*Municipal corporations — Public improvements — Assessment — Construction of charter.*

1. The judgment of a city council upon a question of parliamentary law will not be disturbed by the courts.

2. The declaration of the necessity for a public improvement does not necessarily involve the enumeration of its details, but, although general in character, covers the doing of whatever is deemed or found to be necessary in the course of an improvement of the character designated.

3. After the common council of a city had ordered a street to be paved, and had approved the plans and specifications for the improvement, and the board of public works had advertised for proposals for doing the work, the council adopted the report of a committee recommending that the letting of a contract be deferred until provision was made for sewerage, and, after bids had been received under the advertisement, the council adopted a resolution directing the board to readvertise

for proposals, which was not done, but the board reported the bid received, and the council directed it to enter into a contract with the bidders. And it is held that the council had power to suspend, defer, or postpone the work, and to resume it as well, the exercise of which power was entirely within its discretion, without reference to the reason which led to such postponement.

4. In matters involving the discretion or judgment of a common council, where no bad faith or fraud is alleged, parties cannot go behind the recorded vote to show either want of knowledge or of good judgment.

5. The validity of a special assessment does not depend upon the fact whether or not the members of the council have viewed the property assessed, or the assessment district, with reference to that particular action.

6. Aldermen are supposed to have a general knowledge of the geography, as well as the topography, of their own city, and to know the location and condition of its streets, and are supposed to act upon information furnished by committees, whose duty it is to collect *data* and arrange details.

7. The validity of a special assessment is not affected by the fact that the assessor or city engineer furnished the information or *data* upon which the council acted, or because the officers actually outlined the assessment district, provided their action was adopted, approved, and confirmed by the council; citing *Cuming v. Grand Rapids*, 46 Mich. 150, 158; *Baisch v. Grand Rapids*, 84 Id. 666.

8. The resolution of the common council fixing the assessment district, and declaring the amount to be assessed thereon, for a special improvement, is a legal determination (under a charter authorizing such action) that the benefit conferred upon that district is equal to said amount, and the spreading of such sum upon the assessment roll, and the confirmation of the roll by the council, determines that the proportion of the aggregate benefit received by each parcel is equal to the burden imposed; and, in the absence of fraud, oppression, or manifest mistake, such determinations are conclusive.

9. The proceedings of the common council recited that the amount assessed to a street-car company on account of paving a street represented the cost of paving between the company's tracks, pursuant to the provisions of a specified section of an ordinance authorizing the location and maintenance of the company. And it is held that, as the ordinance is not set forth in the record, it will be presumed that by its terms the company

was liable to the assessment ordered, rather than upon the basis of benefits derived from the improvements.

Appeal from Saginaw. (Gage, J.) Argued June 20, 1891. Decided July 28, 1891.

Bill to restrain the collection of a special assessment. Defendants appeal. Decree reversed and bill dismissed. The facts are stated in the opinion.

*Lawson C. Holden,* for complainants, contended:

1. The "uniform rule" applied by the council and assessor in establishing the assessment district, by taking just half a block each side of an improved street, was arbitrary; and the testimony shows that the making of the assessment was equally arbitrary. Inasmuch as the Legislature has not provided that the assessment shall be according to frontage, area, or the value of the land, it cannot be made on any such basis. The charter provides that it shall be "in proportion to the benefit and advantage which said person or description of property is by the assessor deemed to acquire from the making of said improvement;" and this requires a *personal* examination of the improvements and lands to be made; citing *Hoyt v. East Saginaw,* 19 Mich. 43; *Warren v. Grand Haven,* 30 Id. 29; *White v. Saginaw,* 67 Id. 42; *State v. Hudson,* 27 N. J. Law, 214, 29 Id. 104, 115; *State v. Bergen,* Id 266; Cooley, Tax'n, 177, 454.

2. The true theory of special assessments is that the owner of the property shall neither make nor lose by the improvement. His property should be specially assessed to the amount of the benefit which it receives more than the property of citizens generally receive. He should pay extra for what he gets extra, but should never be required to pay a sum in excess of the enhanced value of his property. If he is not required to pay specially to the full amount of the special benefit he receives, it will be an injustice to the public, and, if compelled to pay for a greater benefit than he has received, it is an injustice to him, of which he may complain. It is the condemnation of his private property to the public use without just compensation; citing *Williams v. Detroit,* 2 Mich. 560; *Warren v. Grand Haven,* 30 Id. 24; *Thomas v. Gain,* 35 Id. 155; *Hanscom v. Omaha,* 11 Neb. 37; *Dyar v. Farmington,* 70 Me. 527; *Zoeller v. Kellogg,* 4 Mo. App. 168; *Lockwood v. St. Louis,* 24 Mo. 20; *Chamberlain v. Cleveland,* 34 Ohio St. 551; *Ottawa v. Spencer,* 40 Ill. 211; *Bedard v. Hall,* 44 Id. 91;

*Wright v. Chicago,* 46 Id. 44; *St. John v. E. St. Louis,* 50 Id.
92; *Kirby v. Shaw,* 19 Penn St. 258; *Schenley v. Com.,* 36 Id.
29, 57; *McGonigle v. Allegheny,* 44 Id. 118; *In re Washington
Avenue,* 69 Id. 360; *Pray v. Northern Liberties,* 31 Id. 69;
*Wright v. Boston,* 9 Cush. 233; *Litchfield v. Vernon,* 41 N. Y.
123; *In re Street Opening,* 20 La. Ann. 497; *Allen v. Drew,* 44
Vt. 174; *Paterson v. Society,* 24 N. J. Law, 400; *State v. New-
ark,* 27 Id. 190; *In re Drainage of Lands,* 35 Id. 497; *State v.
Jersey City,* 43 Id. 135; *In re Mayor,* 11 Johns. 80; *Watkins
v. Zwietusch,* 47 Wis. 513; *State v. Ramsey Co.,* 29 Minn. 62;
*Bradley v. McAtee,* 7 Bush, 672; *Creighton v. Manson,* 27 Cal.
613; *In re Market Street,* 49 Id. 546; *In re Fourth Avenue,* 3
Wend. 452; Cooley, Tax'n, 431, 459; Desty, Tax'n, 1237.

*James H. Davitt,* for defendants.

McGRATH, J.  Complainants file their bill to restrain
the collection of an assessment for paving Genesee ave-
nue from Hoyt to Hartsuff streets.

On the 6th of September, 1886, the council declared
the paving of said avenue "with sapless cedar blocks, to
rest upon sound pine boards, laid upon a bed of sand or
gravel not less than three inches in depth, prepared on
the subgrade of the street to receive the same, the pave-
ment itself to be curbed the whole length of each side
thereof with stone curb securely set in a bed of bank
sand or gravel, and, when complete, to be covered with
a dressing of gravel, all in conformity to details, plans,
and specifications therefor, to be hereafter prepared by
the board of public works, and adopted by this council,"
to be a necessary public improvement, and ordered the
street to be so paved, directing the board of public works
to prepare plans and specifications for said work, and
also to determine the particular kind of material, and
furnish an estimate in detail of the probable cost and
expense of the improvement.  The board of public works
reported the plans and estimates to the council, January
17, 1887, and the same were referred to the proper com-
mittee, which committee reported on January 24, 1887,

recommending the approval of the same, and also recommending the placing of a tile subdrain under the curbstone, on each side of the pavement, representing that the cost thereof would be about six cents per lineal foot. The council adopted the recommendation of the committee, and approved the plans, specifications, and estimates. On February 7, 1887, complainants, with others, presented to the council a written remonstrance, protesting against the assessment of the cost of the tile drain, recommended by the committee as aforesaid, against the particular improvement district, and claiming that the expense should be borne by the city at large. The remonstrance was referred to the committees on paving and sewers, who reported that the district should bear the expense, and not the city at large, which report was concurred in by the council.

On February 14, 1887, the board of public works sent a communication to the council, suggesting the advisability of postponing the paving "until provision be had for the proper drainage of the street," and that it would be well for the council to consider the question before the contract is let, "proposals for which will be received next week." This communication was referred to the committee on sewers and the committee on paving, which committees reported on February 21, 1887, that "they are of the opinion that the letting of said contract had better be deferred until such time as provision is made for the disposal of the surplus water, either by sewers or otherwise." The recommendation of the committees was adopted. Nothing further was done in the matter until April 5. In the mean time the board of public works had received bids for the work, which were afterwards returned unopened to the bidders. Upon the last-named date, the council adopted the following resolution:

"_Resolved_, that the board of public works be and they

are directed to advertise for proposals for the paving of Genesee avenue, from Hoyt to Hartsuff streets, in accordance with the plans and specifications heretofore adopted."

On May 2, 1887, the board of public works reported the bid of Scanlan & Crowley for the paving of Genesee avenue, and recommended that the same be accepted, "provided the council are satisfied that the prices given are reasonable." The following action of the council was had thereon:

" Ald. Comstock moved that the bid of Scanlan & Crowley for paving Genesee avenue, from Hoyt to Hartsuff streets, be referred back to the board of public works, with instructions to readvertise for proposals for such improvement.

" Ald. Becker moved, as an amendment, that the board of public works be instructed to contract with Scanlan & Crowley in accordance with their said proposal.

" Ald. Maier moved, as a substitute, that the matter be referred to the committee on paving. Substitute lost.

" The question was then had on the amendment of Ald. Becker. The same was carried by a vote of 10 ayes to 6 nays."

It is claimed that this action was a nullity, for the reason that, after the adoption of Ald. Becker's amendment, the original motion as amended was not put. But Ald. Becker's amendment was in fact a substitute, and it was unnecessary to put the original motion, although that is a question of parliamentary law, the judgment of the council upon which the courts will not disturb.

The said Scanlan & Crowley proceeded under said contract and direction of the board of public works, and paved said street. At a regular meeting of the council held September 26, 1887, the city clerk reported to the council· that the city engineer had filed in his office detailed estimates of the cost and expense of paving Genesee avenue from Hoyt to Hartsuff streets, giving the said estimates in detail. The estimate shows the

total cost, the amount to be paid by the street railway, the amount to be paid by the city for intersections, and the amount to be assessed upon the property benefited· At a meeting of the common council held October 3, 1887, the following resolution was adopted:

"*Resolved*, that the committee on taxes and assessments and city attorney be, and they are hereby, directed to examine and report to this council a list of the lots, blocks, and parcels of real estate which, in their opinion, are benefited by, and which should be assessed for the cost of, the improvement by paving, etc., of Genesee avenue from Hoyt to Hartsuff streets."

At a meeting held October 10, 1887, the committee on taxes and assessments, and the assessor on tax district, reported such certain lots and blocks as in their opinion would be benefited by such improvement, and recommended that the lots and blocks described be designated as the assessment district. The council received said ·report, and designated the described property as the property benefited, and to be assessed for said improvement, by a unanimous vote. At the same meeting a formal preamble and resolution was adopted by unanimous vote, upon call of the roll, fixing the assessment district, directing the assessor to assess the sum of "$8,544.97 on the property described, in proportion to the benefits and advantages which each description of said property is by him deemed to acquire from the making of said improvement, in the manner required by the charter of said city," and directing the city treasurer to collect from the railroad company the sum of $989.51. At a meeting held February 20, 1888, the clerk notified the council of the filing by the city assessor of the assessment roll, and the clerk was instructed to give notice of the hearing of appeals from said assessment for February 27, 1888, and notice was published by the said clerk as required by the charter. At a meeting of the

council held February 27, 1888, complainants, with others,
submitted to the council a protest against the confirma-
tion of said assessment roll, alleging the following
reasons:

"1. We deem the same illegal, unjust, inequitable, and
against the rights of the undersigned, as the same was
constructed against the wishes of said property-owners,
and was not a necessary public improvement at the time
the same was ordered to be paved, by reason of improper
drainage, which has not been benefited by said improve-
ment.

"2. Because the money expended in and upon said
alleged improvement was excessive, and much in advance
of the amount necessary to perform the work, and make
such an improvement as the locality actually required."

The protest was referred to a committee, which reported
March 5, upon which date the council affirmed the roll,
by a vote of 15 ayes and 1 nay.

The proceedings of the common council show a strict
compliance with all of the provisions of the charter.
But the complainants insist that the tax assessed is ille-
gal, for the following reasons:

"1. Because the said common council never declared
the said improvement as made with tile drain to be a
necessary public improvement.

"2. Because, after declaring the improvement of said
avenue to be a necessary public improvement, the plans
therefor and the improvement itself were changed in this,
to wit, by putting tile drains under the curbs at great
expense, and for which your orators are taxed in said roll
without their consent and against their protest."

.The common council had declared the improvement to
be a necessary one, and had ordered it to be done, and
this before plans and specifications therefor had been pre-
pared, or an estimate was had of the cost of the work.
Before the contract was let, indeed before bids had been
advertised for, it was suggested to the council that sub-

drains were necessary to drain the road-bed under the pavement, and prevent the freezing and heaving thereof in winter, and that such drainage would tend to prolong the life of the pavement materially; and the council, by unanimous vote, adopted the suggestion and ordered the tile drains. The declaration of the necessity for a public improvement does not necessarily involve the enumeration of the details of such improvement, but such declaration, although general in character, covers the doing of whatever is deemed or found to be necessary in the course of an improvement of the character designated.

"3. Because the board of public works let the contract for making said improvement without being thereunto duly authorized by the common council.

"4. Because said board of public works made said improvement without having authority so to do.

"5. Because the common council, after declaring the improvement of said avenue necessary, and ordering it improved, did by its action on the said 21st day of February, 1887, rescind and annul the same, and postpone the making of said improvement until such time as provision should be made for disposal of the surplus water, which provision has not yet been made."

The charter provides that whenever the common council shall have ordered a public improvement, and approved the plans and specifications therefor, the board of public works shall advertise for proposals for doing the said work. The common council had declared this work to be a necessary public improvement, had ordered it to be done, and had approved the plans and specifications therefor, and the board of public works had, in accordance with the provisions of the charter, advertised for proposals. Complainants contend that, by the action of the common council, had February 21, 1887, the improvement was practically abandoned. But the record affords no ground for this assumption. The council had simply determined that the letting of the contract "had better

be deferred until such time as provision was made for the disposal of the surplus water." In the mean time, and on the 4th of April, at an election then held, a loan of $75,000 for the construction of the sewer had been authorized, and at the next meeting the council directed the board of public works to advertise for proposals. It is objected that the vote by which this direction was given was not recorded. The charter provides that—

"No public improvement shall be ordered, nor any tax or assessment shall be levied or confirmed, nor any work, services, or labor authorized to be done, or material purchased, nor any contract awarded or let, nor any money appropriated to be paid for, or out of, or by means of, any special assessment or tax, or from the city treasury, except by a concurring vote of nine members of the common council, including the vote of the recorder when presiding in the absence of the mayor. 　*　　*　　*　　*

"On all questions ordering any public improvement, levying or confirming any tax, approving any contract or bond, appropriating or expending any moneys, and on the final passage of any ordinance, the names of the members voting for or against the same, by yeas and nays, shall be entered upon the record of proceeding."

This resolution did not come within the terms of these charter provisions. This improvement had been ordered. A resolution directing the board of public works to advertise was not necessary, and its only office here was to inform the board of public works that the council had determined to proceed with the work; or, in other words, that the time for which the letting of the contract had been deferred had expired. The council had power to suspend, defer, or postpone the work at that stage, and the power to resume it as well. The exercise of either power was entirely within its discretion. It could postpone, for a reason sufficient to itself, and it could resume whenever, in its discretion, it saw fit so to do, and without reference to the reason which led to a postponement.

" 6. Because the common council, before declaring said improvement to be a public and necessary one, did not go upon the ground, nor visit the locality, nor take the other necessary and proper evidence to determine the fact so declared."

The record does not support these allegations.

" 7. Because the common council did not inspect the street, nor the property in the vicinity thereof, nor take other proper evidence in relation thereto, before fixing the assessment district.

" 8. Because said common council did not view said improvement, nor the property to be assessed, or take other proper evidence in relation thereto, before confirming and approving the special assessment roll.

" 9. Because said common council delegated its authority in the premises to fix the assessment district to others.

"10. Because said common council did not make the assessment."

In matters involving the discretion or judgment of the common council, where no bad faith or fraud is alleged, parties cannot go behind the recorded vote to show either want of knowledge or of good judgment. Nor does the validity of the special assessment depend upon the fact as to whether or not the members of the council have viewed the property assessed, or the assessment district, with reference to that particular action. Aldermen are presumed to have a general knowledge of the geography, as well as the topography, of their own city, and to know the location and condition of its streets. They are supposed to act upon this general knowledge, and upon information furnished by committees, and by agencies whose duty it is to collect *data* and arrange details. Maps are prepared upon which each street and lot is described, and its boundaries shown. Profiles of street improvements are usually prepared, showing pre-existing grades, curb-lines, excavations, and summits. These are the evidences upon

87 MICH.—29.

which the committees and council act. Nor does it affect the validity of an assessment that the assessor or city engineer furnished the information or *data* upon which the council acted, or that these officers actually outlined the district, provided the council adopted, approved, and confirmed their action.  *Cuming v. Grand Rapids,* 46 Mich. 150, 158; *Baisch v. Grand Rapids,* 84 Id. 666. The charter makes it the duty of the assessor to spread the tax, and it is made the duty of the council to confirm it. The assessor performed his duty, and the council confirmed his action.

" 11. Because said common council did not determine or declare that the whole or any part of the expenses of said improvement should be defrayed by an assessment on the owners or occupants of land to be benefited thereby, by an entry in their minutes or otherwise."

Section 6 of title 6 of the charter provides that—

"Whenever the common council shall determine that the whole or any part of the expenses of any public improvement shall be defrayed by an assessment on the owners or occupants of lands to be benefited thereby, they shall so declare by an entry in their minutes, and cause the said improvement to be made by and under the direction of the board of public works.    *    *    *    The common council shall, either before or after the completion of said public improvement, also declare, by resolution, whether the whole or what portion of the costs of such improvement shall be assessed to such owners or occupants, and set forth all lots, blocks, and parcels of real estate, or parts thereof, which, in their opinion, will be benefited thereby, and which shall be assessed therefor."

Section 7 provides that—

"The common council shall, upon the completion of any such public improvement, pass a resolution reciting the same, and the cost thereof, including the expense of making estimates, plans, surveys, assessments, and other expenses incident thereto, and may order the whole, or

so much as they may deem proper, of such expense to be assessed upon the said lots, blocks, and parcels of real estate which, in their opinion, will be so benefited thereby."

By the resolution adopted October 10, as aforesaid, the council declared that, of the expense of said improvement, the sum of $8,544.97 should be assessed upon the owners or occupants of land to be benefited thereby, and that resolution was entered upon the minutes of the council. But it is claimed that this declaration should have been made before the work was commenced. If the first paragraph of section 6 of title 6 of the charter stood alone, there would be some foundation for this claim; but the next paragraph expressly provides that this declaration shall be made either before or after the completion of the work, and section 7 contemplates that it may be done after the completion of the improvement.

"12. Because there is nothing in the assessment roll, nor in any of the proceedings of the common council, nor the record and files of the common council, that shows that the tax assessed was limited to the special benefits conferred.

"13. Because there is nothing in the assessment roll, nor the proceedings of the common council, nor the records and files of said common council, that shows upon what basis or theory said assessment is made, whether by frontage, area, or value.

"14. Because the common council has never determined how much each or any of said parcels of land has been benefited (if at all) by said improvement.

"15. Because it does not appear from any of the proceedings to make said assessment, nor in the assessment itself, that the amounts assessed are no more than the value of the improvement."

The resolution of the council fixing the assessment district, and declaring that the sum of $8,544.97 should be assessed upon the property of that district, was a legal determination, under the charter, that the benefits conferred upon that district were equal to such amount, and

the spreading of the aggregate amount upon the assessment roll, and the confirmation of that roll by the council, determined that the proportion of the aggregate benefit received by each parcel was equal to the burden imposed, and, in the absence of fraud, oppression, or manifest mistake, such determinations are conclusive. It does not appear by the assessment roll that the amounts assessed are no more than the value of the improvement, but that fact does appear in the estimate furnished by the city engineer, and in the preamble and resolutions fixing the assessment district, and directing the spreading of the aggregate amount upon that district, and repetition was unnecessary.

"16. Because the contract was let and improvement made as though no street-car line was laid and operated in said street, and no assessment against said street-car company was made on the basis of the benefits derived therefrom, leaving the amount assessed against your orators unequal, arbitrary, and inequitable."

The proceeeings recite that the amount assessed to the street-car company represented the cost of paving between that company's tracks, "pursuant to the provisions of section 3 of an ordinance" authorizing the location and maintenance of said company. The ordinance is not set out in the record, and it will be presumed that, by the terms thereof, the company was to be assessed with the cost of paving between its tracks, rather than upon the basis of benefits derived from the improvement.

It is unnecessary to consider the other objections made, as they are answered by a reference to plain provisions of the charter.

The decree of the court below is reversed, and complainants' bill dismissed, with costs of both courts.

The other Justices concurred.