GREGORY v. CITY OF ANN ARBOR.

1. HIGHWAYS—DEDICATION—ACCEPTANCE.
   A dedication of land for a public way, to be effectual, must be accepted by the public.

2. SAME—MUNICIPAL CORPORATIONS—RESOLUTION OF COUNCIL.
   Under a city charter providing that no resolution of the council shall be adopted except by a majority vote of the members elect, a resolution accepting a deed of land for a city street, which receives the affirmative votes of less than a majority of the council, does not constitute a valid acceptance.

3. SAME—RIGHTS OF MORTGAGEE.
   A deed of land for a city street, in which a mortgagee of the land does not join, confers no right upon the city as against the mortgagee.

4. SAME—FILING PLAT—WITHDRAWAL.
   A plat purporting to dedicate a city street 42 feet wide was filed, but was withdrawn before its acceptance, after which withdrawal a resolution declaring a street 45 feet wide to be a necessity was passed by the council. Held, that the city acquired no rights by the filing of the plat.

5. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—NOTICE OF REVIEW—WAIVER.
   Where a landowner appears before the board of review in the matter of a special assessment, and objects to the proceedings on the merits, it is a waiver of any irregularity in the service of the notice to appear.

6. SAME—CERTIFICATE OF ASSESSOR.
   An objection that the certificate of the assessor to a special assessment roll does not show the basis on which the assessment was made is without force when such certificate, taken in connection with the proceedings of the council, shows a full compliance with the charter requirements.

7. SAME—MISDESCRIPTION OF PROPERTY.
   The fact that property subject to a special assessment is assessed by the description of a different property is not ground for an objection by the owner of the latter that his property is twice assessed, where the owner of the first property has paid his assessment.

Appeal from Washtenaw; Kinne, J.    Submitted March 5, 1901.    Decided July 10, 1901.

Bill by Samuel R. Gregory and Jennie B. Gregory against the city of Ann Arbor and Leonhard Gruner to set aside a special assessment.    From a decree dismissing the bill, complainants appeal.    Affirmed.

*Randall & Jones,* for complainants.

*E. B. Norris,* for defendant city.

*Lawrence & Butterfield,* for defendant Gruner.

MOORE, J.    The learned trial judge filed a written opinion in this case, which states so clearly the questions involved that we insert it here:

"This is a bill filed to set aside an assessment of tax levied by the city to pay for the right of way incident to the opening of Catherine street between Division and State streets.    The lands of complainants lie adjacent to Catherine street, on the north side thereof.    This opening of Catherine street has a somewhat unusual history, and the case presented is not free from trouble and doubt.

"On March 7, 1898, Mrs. Maynard, whose lands extended from Division street east nearly to State street, delivered to the city, for the purpose of a public highway, a deed of a strip of land 39 feet wide, extending east along the entire length of her property.    Although this deed was a gift, it contained two conditions:

"1. That the city should forthwith expend in the improvement of such proposed street not less than $200.

"2. If the city should at any time take proceedings to condemn any of her land on the north side thereof for the purpose of a street, then this deed should become null and void, and the land should revert to her, her heirs or assigns.

"It seems that the members of the council were in disagreement respecting the wisdom of accepting the deed. It was accepted by a vote of seven in the affirmative and six in the negative.    On the 8th day of April following, at the request of Mrs. Maynard, the city reconveyed this strip of land to Mrs. Maynard.    There is no evidence that the city ever complied with the first condition in said

deed. I am of the opinion that the acceptance of this deed required a majority vote of all the members elect, and that therefore there was not a legal acceptance of such deed. A casual glance might lead one to the conclusion that the city acted inadvisedly in relinquishing the right of way given by Mrs. Maynard. It must, however, be remembered that the deed of Mrs. Maynard conveyed a strip of land but 39 feet wide, lacking 8 rods of extending through to State street, and thus creating a mere *cul-de-sac.* It was very important to the public, and to those whose lands would adjoin the proposed street, that it should be opened to State street. The house and lot of Mrs. Whitlark lay directly in the path of this proposed street, and she held her premises at $4,500. This street, as opened by the city, has a width of 45 feet, and passes through the land of Mrs. Whitlark to State street, and without any contemplated expense to the city.

" On April 16, 1898, Mrs. Maynard conveyed all her land, except her homestead, to Leonhard Gruner, who also acquired the property of Mrs. Whitlark, at a cost of some $4,000; On or about May 10, 1898, Mr. Gruner and Mrs. Maynard made a joint plat of the lands, and left the same with the register of deeds. By this plat a street 42 feet in width, and extending from Division street to State street, was opened and established. It, however, left a strip of their land 3 feet in width on the north side thereof, which was probably intended as a forcible suggestion that those persons whose lands adjoined the proposed street on the north, and thus became of enhanced value, before obtaining access to this proposed street, should contribute their just share towards the cost and expense of opening this street. Apparently it did not succeed, and Mr. Gruner withdrew the plat from the office of the register of deeds. After this street had been opened and established by the city, as hereinafter stated, this plat was revised, and returned to the register of deeds, showing a street 45 feet in width directly abutting the lands of the parties on the north side thereof, and conforming to the street as opened by the city.

" On October 17, 1898, a petition was presented to the council asking for the opening of this proposed street. The time and place were fixed by the council for the hearing of this petition. The affidavit of the marshal, showing service of notice of this hearing, is defective, but it appears that the complainants were represented at the meeting,

and presented a written protest. Proceedings were thereupon taken by the city looking to the establishment of this street, and the assessment of the cost thereof upon the adjacent owners. Some serious questions appear in this case, but those which have not been urged by counsel, or were not raised by the pleadings, I shall not discuss. I am of the opinion that the proceedings of the city in the matter of opening and establishing this street should be sustained.

" An unfortunate error was made in the preparation of the tax roll. Although the lands of the complainants are correctly described, it appears that, in describing the land of Ellen Morse, her land has the same description as one of the parcels of the complainants. It appears, however, that she took no advantage of the fact that the lands were erroneously described, but paid her assessment. It does not seem to me, therefore, that the complainants have any cause for complaint on this ground.

" Undoubtedly, to the complainants the large assessment upon the premises seems unreasonable, and it may operate as a great hardship to them, unless due consideration is given to the enhanced value of their lands. There are reasons why I should be glad to relieve them of this burden, but I have been unable to see my way to do it. Undoubtedly, the council have acted in good faith in the proceedings, and have done what they believe to be just to all parties concerned, and for the welfare of the public.

" I think the bill of complaint should be dismissed, but, under all the circumstances of the case, without costs against the complainants."

It is claimed the action of Mrs. Maynard in March, 1898, amounted to a dedication of the street. Section 74 of the charter of the city, being Act No. 331 of the Local Acts of Michigan of 1889, as amended, provides:

" No money shall be appropriated except by ordinance or resolution of the council; nor shall any resolution be passed or adopted except by a vote of the majority of all the members elect, except as herein otherwise provided."

It appears from the charter that there are 15 members of the common council, and from the record that only seven members voted for the resolution accepting the deed, while six voted against it. In order to be valid, the acceptance required eight affirmative votes.

The record discloses that Mr. Gruner had a mortgage upon this land at this time, and did not join in the deed. The city, therefore, did not acquire any rights against him. 9 Am. & Eng. Enc. Law (2d Ed.), p. 29, and cases there cited.

· It also appears that the city did not forthwith expend in the improvement of this land $200, or any other sum. It has long been the law in this State that there must not only be an intent to dedicate the street to the public, but that there must be an acceptance of the dedication by the public. *People* v. *Jones*, 6 Mich. 183.

As to the plat made by Mr. Gruner and Mrs. Maynard in May, it provides for a street only 42 feet in width, and left a strip of land 3 feet wide north of the street, belonging to the persons who signed the plat. . Before the plat was accepted, before any resolution was passed declaring the street a necessity, and before any copy of the plat was filed with the Secretary of State, the plat was withdrawn from the record, and the offer to dedicate was thereby revoked. At the time the petition of October 17, 1898, to lay out the street was filed, there was no plat on file, nor was any plat on file when the resolution spoken of in appellants' brief, declaring the street a public necessity, was passed. · The plat was withdrawn in the summer of 1898, not long after it was filed. It was between the 25th of July and the 1st of August. The petition to open the street upon which the tax rests was dated October 5, 1898, and appears in the proceedings of the council of October 17, 1898. The resolution declaring the street a public necessity was passed on October 17, 1898. The resolution declared the necessity to be for a street 45 feet wide, whereas the plat which complainants claim dedicated a public street shows a street only 42 feet wide. We do not think the public acquired any rights to the street because of this plat. *Diamond Match Co.* v. *Village of Ontonagon*, 72 Mich. 260 (40 N. W. 448). ·

It is claimed there was no proper notice served of the session of the board of review to consider the special

assessment roll.    The affidavit shows service upon S. R.
Gregory, his wife, and his sister.    S. R. Gregory, his
wife, Jennie B., and his sister, Hannah, are the only
persons interested in the property involved in this case.
Both complainants appeared and objected in writing to
the proceedings, not because of want of notice, but for
other reasons.    We think this would waive any irregu-
larity, if there was any.

It is urged that the common council, instead of estab-
lishing a special assessment district itself, entered into a
contract with Mr. Gruner, the practical effect of which
was to allow him to establish the special assessment
district.    There is nothing in the report of the committee,
or in the action of the council, to indicate that the bound-
aries of the assessment district which the committee rec-
ommended, and which was adopted by the council, in any
way entered into the agreement with Mr. Gruner.

It is said the proceedings are void because the certificate
of the assessor does not show the basis upon which the
assessment was made.    We cannot agree with the
solicitors in this contention.    The case comes within *Da-
vies* v. *City of Saginaw*, 87 Mich. 439 (49 N. W. 667).
See, also, *Cuming* v. *City of Grand Rapids*, 46 Mich.
150 (9 N. W. 141); *Baisch* v. *City of Grand Rapids*,
84 Mich. 666 (48 N. W. 176).

It is said one parcel of property was twice assessed.
This is the land referred to in the opinion of the trial judge
as belonging to Ellen Morse.    We adopt his views in rela-
tion to this question.

The decree is affirmed, with costs of this court.

MONTGOMERY, C. J., HOOKER and GRANT, JJ., con-
curred.    LONG, J., did not sit.