NANCY. REED and MARY M. REED v. THE CITY OF CEDAR
RAPIDS and W. N. DEARBORN, Appellants, and THE
CITY OF CEDAR RAPIDS, Appellant, v. NANCY REED
and MARY M. REED and JOHN A. REED.

| 137 | 107 |
| --- | --- |
| 140 | 222 |
| f141 | 69 |
| f141 | 72 |
| 137 · | 107 |
| 144 | 629 |

**Municipal corporations:** CONSTRUCTION OF SEWERS: NOTICE: WAIVER
OF DEFECT. While it is the general rule that proceedings for the
special assessment of property must be in strict compliance
with the statute, still there may be a waiver of defects and
irregularities which do not mislead the property owner, so that
the tax will not be invalidated thereby; as where there was a
defective description of the proposed location of sewers which
would have been fatal to the jurisdiction of the council, had not
the objecting property owners, appeared and objected to the
location of the sewer and assessments on entirely different
grounds.

**Same:** FILING OF PLAT AND SCHEDULE. Where the plat and schedule
for the construction of a sewer was properly filed in the office
of the city recorder, although subsequently removed to the
city engineer's office in the same building where it remained
subject to inspection during the further progress of the work,
the statute relating to filing the same was sufficiently complied
with; especially as no prejudice was shown arising from such
removal.

**Same.** When the plat and schedule for the construction of a
sewer, as filed with the city recorder, contains all the require-
ments of the statute there is no necessity of filing a duplicate
of the same after the work is completed.

**Constitutional law:** DUE PROCESS. The failure of the statute to fix
a certain time for the hearing of objections to the construction
of a sewer and levy of an assessment therefor by the city
council is not fatal to its constitutionality, in that it permits
the taking of property without due process of law; the right of
appeal to the district court is sufficient to meet the constitu-
tional requirement of due process.

**Special assessment:** BENEFITS. In determining the benefits to
property by the construction of a sewer it is proper to consider
the frontage, and this will not constitute an assessment by
the old front foot rule rather than according to the benefits
conferred.

**Same.**   Where provision was made to extend water service co-
extensive with a constructed sewer it is proper, in determining
the benefits of the sewer, to compute the same on the basis of
a complete water service.

*Appeal from Linn District Court.*— HON. WM. G. THOMP-
SON, Judge.

FRIDAY, MAY 17, 1907.

REHEARING DENIED MONDAY, JANUARY 20, 1908.

THE first of these cases is an action in equity brought
by Nancy Reed and Mary M. Reed to restrain the city of
Cedar Rapids from levying an assessment against the plain-
tiffs' property for the proposed construction of a sewer, and
also to restrain the appellant Dearborn from accepting sewer
certificates for any sewer that might be constructed, or
from disposing of such certificates, and asking that plain-
tiffs' title to said property be quieted against any claim
for any assessment made or any certificates issued, or against
any claim or alleged lien against the property of plaintiffs
by reason of said sewers.   The second of the cases was an
appeal by John A. Reed, Mary M. Reed, and Nancy Reed
from the action of the city council of the city of Cedar
Rapids in levying assessments against their property by
reason of the construction of the same sewers that were in-
volved in the first case.   When the cases were called for
trial, they were by agreement consolidated.

In November, 1903, the property owners of the district
covered by the sewers in question petitioned the city council
of Cedar Rapids for the extension of the sanitary sewers
through that district.   At the same time the plaintiffs in the
first suit, Nancy Reed and Mary M. Reed, circulated and
filed a remonstrance against such extension of the sewers.
The other appellee, John A. Reed, was not then interested
in the property, and did not act other than as the attorney
for the plaintiffs named.   On the 20th of May the city

council passed a resolution of intention to construct these sewers, and notice of such intention was published on June 1st, 2d, and 3d.   On June 10, 1904, the sewers were ordered by resolution of the council, and the chairman of the public improvement committee was directed to advertise for proposals for their construction.   To all of this the plaintiffs interposed their objections.   Notice to contractors was thereafter published,· and on June 24, 1904, the contract for the construction of the sewers was awarded to W. N. Dearborn, one of the defendants in the first or injunction suit, which was commenced in August, 1904. In November following the public improvement committee and city engineer reported that the sewers had been completed and recommended the acceptance of the same, and on the same day the city by resolution accepted the same, and directed ten days' notice to be published of the intention of the council to assess the cost of their construction upon the abutting and adjacent property.   Objections were required to be in writing and filed with the city recorder on or before the second day of December, 1904.   On said date the plaintiffs in the injunction suit and John A. Reed, who had in the meantime become interested in the property, filed their written objections to the assessment.   At the council meeting on December 2, 1904, these objections were referred to the public improvement committee, and on the 16th day of the same month this committee reported adversely thereon, and at a meeting of the city council held that day the assessment was made. From this assessment an appeal was taken to the district court.   On the trial of the consolidated cases there was a judgment for the Reeds, from which the city of Cedar Rapids and Dearborn appeal:— *Reversed* and *remanded.*

*James W. Good* and *H. E. Spangler,* for appellants.

*John A. Reed* and *W. E. Lamb,* for appellees.

SHERWIN, J.— The sewers in question were laid in the avenues, streets, and alleys on the west side of the river, and the avenues and streets on that side of the river are designated and known as avenues and streets west, and, as we understand the record, the avenues and streets on the east side of the river have the same numbers, but are not designated avenues and streets east. The notice of intention to construct the sewers and the notice of the intention to levy the assessment were properly published, but neither described the avenues and streets as avenues and streets west, and the appellees contend that, because of such failure, the council was without jurisdiction to act, and that all of its proceedings thereunder were absolutely void.

It is well established in this State that proceedings for the special assessment of property must be in strict compliance with the statute, and this court has also held that

1. MUNICIPAL CORPORATIONS: construction of sewers: notice: waiver of defect.

the notice required by section 965 of the Code is jurisdictional, and that, unless the same be given as therein provided, the city acquires no jurisdiction to act. *Owen v. City of Marion*, 127 Iowa, 474; *Galligher v. Garland*, 126 Iowa, 210; *Martin v. Oskaloosa*, 126 Iowa, 680; *Zalesky v. City of Cedar Rapids*, 118 Iowa, 714. These cases are also authority for the rule that, where the city has acted without jurisdicton, an injunction will lie to restrain the collection of the tax; but, if the notices are only defective or erroneous in some particular which may be corrected by objections to the council or by appeal to the courts, such defects or errors are not jurisdictional, and the proceedings thereunder are not void. *Owen v. City of Marion, supra.* There was a defective description of the proposed location of the sewers which might have been fatal to the jurisdiction of the council had the appellees not appeared and contested the matter, or if they had not had actual notice of the true location. But, as we have heretofore seen, the notices were given as required by the statute, describing the avenues and streets

correctly, except that the word "west" was omitted there-from; and the appellees appeared and protested or objected to the location of said sewers and the assessment therefor, not on the ground that the location was improperly desig-nated, but on entirely different grounds. The appellees were not misled by such defective description in the notice, and we think their appearance was a waiver of the defects therein. *Murphy v. Peoria,* 119 Ill. 509 (9 N. E. 895); *Quick v. River Forest,* 130 Ill. 323 (22 N. E. 816); *Gregory v. Ann Arbor,* 127 Mich. 454 (86 N. W. 1013). And see *Dist. Twp. v. Dist. Twp.,* 54 Iowa, 115; *Locke v. Chicago Chronicle,* 107 Iowa, 390; *Moffitt v. Chicago Chronicle,* 107 Iowa, 407. Defects and irregularities in the resolution or notice which do not mislead the property owner will not invalidate the tax. *Dittoe v. Davenport,* 74 Iowa, 68; *Hawkeye L. & B. Co. v. Marion,* 110 Iowa, 472. The record also shows that the plat and schedule filed ten days before the resolution for the sewers was adopted showed the exact location thereof, giving the additions in which the lots appeared, and these additions are the only ones of the name in the city.

The appellees' second point is that no plat and schedule, as required by section 965 of the Code, was ever filed in the office of the city recorder. The facts are that the plat and schedule were prepared by the city en-gineer and filed in the city recorder's office on the first of June, 1904, and were then taken by said engineer to his office in the same build-ing, where they remained during the further progress of the work. We think this a substantial compliance with the statute. The plat and estimate were in fact, filed in the proper place, and the record shows that, while in the en-gineer's office, they were accessible to the recorder and his deputy, and that all persons calling therefor in the recorder's office were in fact shown them either there or in the en-gineer's office. It is not shown that the appellees were de-

2. SAME: filing of plat and schedule.

nied any right or that they suffered any injury because the plat was not at all times kept in the recorder's office, and we think their point is without merit.    See *Dittoe v. Davenport,* and *Hawkeye v. Marion, supra.*

It is also said that no plat and schedule were filed after the completion of the work as required by Code, section 821. The requirements of this section are substantially the same

3. SAME.

as those of section 965, and, while section 966 provides that section 821 shall be applicable to cities acting under special charters, it could not have been the legislative intent to require the filing of the duplicate plats and schedules in the recorder's office.    As we understand the record, the plat and schedule prepared by the city engineer contained all of the requirements of section 821, and, if this be true, no purpose would be served by duplicating them after the work was completed.

The appellees further contend that section 971 of the Code contravenes the provisions of the Constitution of the United States and of this State, prohibiting the taking of

4. CONSTITU-
TIONAL LAW:
due process.

property without due process of law, in that it does not provide an opportunity for the taxpayer to be heard.    The section is as follows: " After filing the plat and schedule referred to in section eight hundred and twenty-one, chapter seven, of this title, the council shall direct the clerk or recorder to give ten days' notice, by publishing same three times in a newspaper published in said city, that such plat and schedule are on file in the office of the clerk, fixing a time within which all objections thereto or to the prior proceedings must be made in writing; and the council, having heard the objections and made necessary corrections, shall levy the special assessment as shown in such plat and schedule."    The section does not provide a definite time for hearing objections.    It does no more than to require a notice of the filing of the plat and schedule, and the fixing of a time within which all objections thereto or to the prior proceedings must be made in writing.    It is

true it provides, by implication at least, that the council shall hear the objections, and from this it may perhaps be said that it contemplates the presence of the objecting parties and a full hearing. But, however this may be, we are of the opinion that the omission to require the fixing of a time certain for hearing the objectors is not fatal to the constitutionality of the section. Provision is made for a notice of the time within which objections must be made in writing, and that such objections shall be heard and considered by the council. If it be said that the council was not obliged to listen to evidence in support of said written objections, it still is true that the parties were not denied an opportunity to present their case in writing, and this we think was sufficient for the purpose of protecting their rights. The cases most relied upon by the appellees in support of their position on this point are *Gatch v. City of Des Moines,* 63 Iowa, 718, and *Trustees of Griswold College v. City of Davenport,* 65 Iowa, 633. In both of those cases, however, there was no opportunity to be heard in any way either personally or by written objections. The cases are therefore not controlling.

Moreover, it is not denied that the right of appeal to the district court existed in favor of the appellees herein, and they did in fact appeal and have a full hearing there. This in itself is sufficient to meet the constitutional requirement of due process. *Yoemans v. Riddle,* 84 Iowa, 147; *Butts v. Monona County,* 100 Iowa, 74; *Oliver v. Monona County,* 117 Iowa, 43; *Davidson v. New Orleans,* 96 U. S. 104 (24 L. Ed. 616); *Hagar v. Reclamation District,* 111 U. S. 701 (4 Sup. Ct. 663, 24 L. Ed. 1044); *Lent v. Tillson,* 140 U. S. 316 (11 Sup. Ct. 825, 35 L. Ed. 419).

What we have already said on the question of due process disposes of the claim that the objections filed were 5. SPECIAL ASSESSMENT: benefits. referred to the public improvement committee of the council. Under the statute an assessment for any public improvement must be in proportion to

the special benefits conferred upon the property thereby and not in excess of such benefits. Code Supp. 1902, section 792a. And the appellees say that the assessment herein was made on the old front-foot rule. This claim is not sustained by the record, however. It may be true that the frontage was considered in determining the benefits conferred, and in our judgment such consideration is entirely proper, for the benefits cannot well be ascertained without considering the size, shape, and location of property. *M. & St. L. R. R. Co. v. Lindquist,* 119 Iowa, 144.

Nor is the fact that water service was not then extended to reach every part of the sewer a controlling factor in the case. It is shown that before the trial below action had been taken which would soon result in so extending it, and, if it were to be held that a sanitary sewer can confer no benefits except in conjunction with a city water system, a proposition to which we are not now ready to subscribe, we still hold that, when it appears that provision has already been made therefor, benefits may be computed on the basis of a complete service.

6. SAME.

We think the trial court erred in holding the tax invalid, and the judgment must be and it is reversed, and the case remanded for a judgment in harmony with this opinion. — *Reversed.*