# CHARLESTON.

John Monto *v.* Patrick Gillooly, *Etc.*

(No. 6356)

Submitted March 12, 1929.    Decided March 19, 1929.

152

*D. H. Hill Arnold* and *Chas. Ritchie,* for plaintiff in error.
*Spears & Irons* and *John F. Brown,* for defendant in error.

HATCHER, JUDGE:

The defendant is the surviving partner of Marshall and Gillooly, contractors. They entered into an agreement with the State Road Commission to grade and pave with a bituminous macadam surface 6.8 miles of a state road, identified as State Project No. 3325, Barbour county. They then sublet to plaintiff the quarrying of all the stone for the napped stone base course of the project, the fine grading and the construction of the base course, to the satisfaction of the Road Commission. The plaintiff was to receive $1.00 per cubic yard for quarrying the stone, and a like sum for constructing the base course. It was specified that the prices named included *all work and labor incident to* both the quarrying and the construction. The plaintiff seeks in this action to recover

damages alleged to have been occasioned him by a certain breach of the contract; payment for certain work alleged to have been performed by him under the contract; and compensation for certain work alleged to have been performed by him at the direction of the partnership which was not included in the contract.

The items in his demand are as follows:

1. Damages for change of 9600 feet in the pavement of the road from macadam to concrete....$ 3,234.00

2. Payment for stone quarried on Talbott farm at the direction of the partnership, but condemned by the Road Commission........................ 300.00

3. Compensation for cost of clearing away the soil to get to the stone of a rock quarry at "Century No. 2"...................................................... 234.00

4. (a) Compensation for heavy grading from station 0 to station 336+50, amounting to 18,815 cu. yds............................................. 18,815.00

   (b) Compensation for construction of 20,400 lin. ft. of berms at 10c per ft........................ 2,040.00

   (c) Compensation for construction of ditches 2,024.46

$26,647.46

The defendant contested each of the above items, but the jury returned a verdict in favor of plaintiff for $13,426.29, which was confirmed by the trial court. The items will be discussed in the order named.

1. During the progress of the work the partnership secured a modification of its contract with the Road Commission, whereby about 9600 feet of the project was paved with concrete instead of macadam. This change eliminated the use of napped stone as a base. The plaintiff testified that this modification was made without his consent, and that he would have made a profit under his contract of about 80 cents per cubic yard on the stone which he would have quarried and used in the construction of the base course of the 9600 feet, had the contract not been changed. Witnesses for defendant testified that plaintiff knew in advance that the change was contemplated, and that he not only consented to the change,

but expressed gratification because it was made. The defendant admits that so far as the evidence conflicts, it is a jury question, but contends that as the evidence shows no protest or objection by plaintiff to the change, prior thereto, he is now precluded by his passivity from claiming damages because of the change, citing 9 C. J., p. 855, section 192, and Wait on Eng. and Arch. Juris., section 580, p. 507. The citations refer to a situation where the contractor waives the original contract by performing it as changed, without objection. They might apply here had the plaintiff constructed the concrete pavement on the 9600 feet, but he did not do so. In asserting the modification of the contract the defendant has the burden of proof. He must show that the partnership and the plaintiff definitely agreed to the change. This burden is not sustained, as a matter of law, by merely showing the failure of plaintiff to protest the change. 13 C. J., p. 762, section 950.

We find no error in plaintiff's instruction, or in the exclusion from the jury of the contract between the partnership and the Road Commission, relative to the change. The plaintiff was not a party to that contract, and could not be bound by its recitals. 4 Ency. of Ev., p. 184, sec. C. Besides, the manager of the partnership was allowed to testify fully as to the matters leading up to the modification.

2. Three hundred cubic yards of stone quarried by plaintiff on the Talbott farm were rejected as too soft by an inspector of the Road Commission. The plaintiff testified that over his protest he was directed by the manager of the partnership to quarry this stone with the express assurance of payment. The manager testified that there was hard as well as soft stone, easily distinguishable, at the Talbott quarry, and that he expressly instructed plaintiff to quarry only the hard stone there. This was a jury question.

3. At Century No. 2 quarry, the plaintiff says the stone was overlaid with about ten feet of soil, and that he refused to remove the soil until payment therefor was expressly promised him by the manager of the partnership. This alleged promise is denied by the manager. There is no evidence that the depth of soil at this quarry was so unusual,

as to be entirely without the contemplation of the parties when they contracted. The removal of the soil necessary to get to stone is ordinarily an incident of quarrying. "The doing of any work necessary for the proper and convenient use of the pit, such as the removal of earth, debris, water, ice, or snow, would be working the quarry as truly as the blasting and removal of the slate." *Miller et al.* v. *Chester Slate Co.*, 129 Pa. St. 81; *Freston* v. *Cement Co.*, 30 N. Y. Supp. 144-5. Therefore, the giving of plaintiff's instruction authorizing recovery for removing the soil at this quarry was error.

4. (a). The plaintiff testified that the "*fine grading*" specified in the original contract required grading by him not to exceed an average of about four inches; that the rough grading which was done by the partnership was so incomplete that in addition to the fine grading he was compelled to move by "actual measurement", (records of which were introduced in evidence) an average of fifteen inches of soil and rock over his entire construction in order to bring the road to grade, and that for this additional work he was expressly promised remuneration by the partnership. According to his claim he moved 18,815 cubic yards, not included in the contract, for which $1.00 per cubic yard is a reasonable charge. The defendant denied any such promise and produced an imposing array of evidence controverting the plaintiff's statement as to the incompleteness of the rough grading except in a few specified places. As to these places the defendant admitted a special promise to pay and the plaintiff admitted receiving payment therefor. Despite the very substantial arguments against the propriety of plaintiff's claim with which defendant supports his evidence, we are of opinion that this claim is a jury question, and that there is no error in the instruction submitting it to the jury.

(b). Under plaintiff's interpretation of the contract he was not obligated to construct the berms (shoulders) which support the base course. He testified that he did construct berms of from two to three feet in width, upon the partnership's promise of payment therefor. It was shown that berms at least eighteen inches in width are necessary to support the

base course. "Whatever is necessary to be done in order to accomplish the work specifically set forth in a contract, as agreed to be performed, is parcel of the contract though not specified." *Currier* v. *B. & M. Rr.*, 34 N. H. 498; *Indiana Ry. Co.* v. *Adamson,* 114 Ind. 282, 288; *Stuart* v. *Cambridge,* 125 Mass. 102, 109; *Davies* v. *City of Saginaw,* 87 Mich. 439, 447; *Ashley* v. *Henehan,* 56 Ohio St. 559, 571; Wait, *supra,* section 600. The berms must therefore be considered as incident to and part of plaintiff's obligation to construct the base course. Payment for the berms was included in the $1.00 per cubic yard that he received for the completed course. The alleged promise to pay plaintiff for the berms was denied. But even if made, it would have been without consideration and therefore a nullity. If plaintiff made the berms slightly wider than requisite, that was his misfortune. The instruction submitting to the jury his right to recover for constructing the berms was accordingly erroneous.

(c). The plaintiff also takes the position that he was not required to do any ditching under his original contract, but that he did do some under an express promise of the partnership to compensate him. Again the alleged promise is denied. The plaintiff admits the necessity of draining the subgrade, in preparation for the base course. His evidence does not distinguish between the amount of ditching necessary to properly prepare the subgrade and that done, if any, outside of his contractual obligations. Consequently, his instruction submitting to the jury his right to recover for *all the ditching* he did, was error.

In support of a claim of offsets the defendant testified that the plaintiff did not quarry "filler" for the base course as rapidly as required; that with plaintiff's consent some slag was ordered and used as "filler", and that the partnership paid $586.80 freight on the slag. The trial court properly struck out this evidence. The hauling of the filler from the quarries was an obligation of the partnership, under the contract. If the freight was greater on the slag than the cost of hauling a corresponding amount of filler from the quarries then in use, the defendant would have been entitled

to a credit of the difference. But such comparative evidence was not adduced.

The defendant caused estimates of the work performed by plaintiff to be furnished him from time to time. None of these estimates contained the work or any part thereof for which plaintiff now sues. The defendant contends that plaintiff acquiesced in the estimates and is now estopped from demanding settlement for work not included therein, citing *Vaughn Const. Co.* v. *Ry. Co.*, 86 W. Va. 440. As far as the evidence shows there is no essential element of estoppel in plaintiff's conduct, whether by deed or *in pais*. The estimates are not made conclusive by the contract. See *Towles & Co.* v. *County Court*, 95 W. Va. 310. The failure of the plaintiff to assert his claims promptly, has no semblance of misrepresentation or concealment. His inaction is not shown to have prejudiced the partnership in any way. While his silence under the conditions disclosed by the evidence may be an argument against the validity of his claims, it is not an estoppel. "Mere silence of itself will not raise an estoppel. To make the silence of a party operate as an estoppel, the circumstances must have been such as to render it his duty to speak. * * *. And it is essential * * * that the adverse party should have been ignorant of the truth and have been misled into doing that which he would not have done but for such silence." 21 C. J., p. 1150, sec. 154.

One of defendant's witnesses was directed by the court "to answer the questions and quit his dodging and humhawing". The testimony of the witness indicates that he was garrulous, but does not disclose a disposition to evade questions. The record does not justify the reprimand.

As there is no way for us to know what allowances are included in the verdict, the foregoing errors must be regarded as prejudicial. The judgment of the trial court is accordingly reversed.

*Reversed.*