## LENT v. TILLSON.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 144. Argued January 8, 9, 1891. — Decided May 11, 1891.

The Statute of California, of March 23, 1876, entitled "An act to authorize the widening of Dupont Street in the city of San Francisco" provides for a due process of law for taking the property necessary for that purpose, and is not repugnant to the Fourteenth Amendment to the Constitution of the United States.

Mere errors in the administration of a state statute which is not repugnant to the Constitution of the United States will not authorize this court, in its reëxamination of the judgment of the state court on writ of error, to hold that the State had deprived, or was about to deprive a party of his property without due process of law.

The board of commissioners and the county court had jurisdiction to proceed in the execution of that statute.

A publication in a "supplement" to a newspaper of a notice ordered to be published, is a compliance with the order.

THE case, as stated by the court, was as follows:

This suit, which was commenced April 5, 1879, arises out of an act of the legislature of California, approved March 23, 1876, entitled "An act to authorize the widening of Dupont Street in the city of San Francisco." An assessment was made to meet the cost incurred in its execution. Provision was made in the act to issue and sell bonds to meet such cost in the first instance, and for the levy of an annual tax on the lands benefited, in proportion to benefits, to pay the interest on the bonds, and to create a sinking fund for the payment of the principal debt. Bonds, dated January 1, 1876, to the amount of one million dollars, were issued in the name of the city and county of San Francisco, and made payable to the holder in gold coin of the United States, twenty years after date, with interest, payable half yearly, at the rate of seven per cent per annum. The bonds recited that they were issued under the above act, were to be paid out of the fund raised by taxation as therein provided, and were taken by the holder subject to the conditions expressed in its 22d section to

be hereafter referred to. They were signed by the mayor, auditor, and county surveyor, and attested by the official seal of the city and county. The plaintiffs in error, who were the plaintiffs below, being owners of lots or parcels of land within the district subject to the assessment, and claiming that the statute was unconstitutional and void, brought this suit to obtain a decree perpetually enjoining the defendant in error, tax collector of the city and county of San Francisco, from selling their property under the assessment. Holders of the bonds to a large amount intervened and were made defendants. The court of original jurisdiction — the Superior Court of the city and county of San Francisco — rendered a decree giving the relief asked. Upon appeal to the Supreme Court of California that decree was reversed and the cause remanded with directions to dissolve the injunction and dismiss the complaint.

The statute in question contains many provisions. The first section provides that, subject to the provisions of the act, Dupont Street in San Francisco should be increased to the uniform width of 74 feet (measuring westerly from its then easterly line) from the northerly line of Market Street to the southerly line of Filbert Street, the grades of the intersecting cross streets to be adjusted by the Board of Supervisors so as to make them conform to the grade of the west line of Dupont Street to be established by the Board of Supervisors, which was empowered to pass all necessary orders for that purpose. The second section provides that the value of the land taken for the widening of the street, and the damages to improvements thereon or adjacent thereto, which may be injured thereby, and all expenses whatsoever incident to such widening, "shall be held to be the cost of widening said street, and shall be assessed upon the district hereinafter described as benefited by said widening, in the manner hereinafter provided." The district declared to be benefited, and upon which the cost of making the improvement was directed to be assessed, is defined in the act, and it was provided in section 3 that in case Dupont Street be not widened further north than Bush Street, then the districts to be benefited

" shall be bounded on the north by the southerly line of Bush Street, and on the south by the northerly line of Market Street." The majority in value of the property owners fronting on Dupont Street, between Market and Bush streets, were allowed to defeat the proposed improvements between those streets, and to relieve that portion of the assessment district from any burden on account of it, by filing a written protest at any time within thirty days after the notice provided for in section 6 of the act to be presently referred to. No such protest was filed. The act also provided that unless within that time a majority of property owners fronting on Dupont Street, between Bush and Filbert streets, should petition for it, there should be no widening north of Bush Street, and that portion of the assessment district should be excluded. No such petition was filed, and the widening was limited to the four blocks between Market and Bush streets. (Section 12.)

The mayor and auditor of the city and county of San Francisco, together with the city and county surveyor, and their successors in office, were constituted by section 4 a " Board of Dupont Street Commissioners," the mayor to be *ex officio* president of the board. The Board of Supervisors of the city and county were authorized, if they deemed it expedient that Dupont Street be widened in the mode prescribed, to express such judgment by resolution or order within sixty days after the passage of the act, and if they failed to do so no further proceedings were to be had or taken, under the act, for any purpose, and the street was not to be widened. (Section 21.) As soon as convenient after the passage of such a resolution or order by the Board of Supervisors, the Dupont Street Commissioners were directed to " publish a notice, for not less than ten days, in two of the daily papers printed in the city of San Francisco, informing property owners along the line of said street that the board is organized, and inviting all persons interested in property sought to be taken, or which would be injured by said widening, to present to the board maps and plans of their respective lots, and a written statement of the nature of their claim and interest in such lots." (Section 6.) The Board of Commissioners, having prepared and adopted suitable

maps, plans and diagrams, were required to ascertain and deter-
mine and separately state in a written report, to be signed by
at least a majority of its members, the description and actual
cash value of the several lots and subdivisions of land and build-
ings included in the land taken for the widening of Dupont
Street, and the damage done to the property along the line of
the street, specifying and describing in their report each lot
and subdivision or piece of property taken or injured by the
widening of the street, as far as an accurate description thereof
was furnished by the owners, and setting down against each
lot, subdivision or piece of property the names of the owners,
occupants and claimants thereof, or of the persons interested
therein, as lessees, incumbrancers or otherwise, and the par-
ticulars of their interest, as far as they could be ascertained,
and the amount of value or damage determined upon for the
same, respectively. If, in any case, the board found that con-
flicting claims of title existed, or were in ignorance or doubt as
to the ownership of any lot of land, or of any interest therein,
the lot was to be set down as belonging to unknown owners.
The board was also directed to embody in a written report a
description of the subdivisions or lots of land included in the
districts designated in section three of the act, and to set against
each lot or subdivision the amount in which, according to the
judgment of the board, such lot will be benefited by reason of
the widening of the street, relatively to the benefits accruing to
other lots of land within the designated districts; also setting
against each lot or subdivision the names of the owners, lessees
and claimants thereof, so far as the same can be ascertained
conveniently, and if not ascertained, setting them down to un-
known owners. Error, however, in the designation of the owner
or owners of any lot taken or assessed was not to affect the
validity of the assessment. Suitable maps, plans or diagrams,
showing the property taken and assessed for the improvement,
in lots and subdivisions, with the names of the owners, lessees
and claimants, as far as known to said board, were to be at-
tached to the report. " Such report," the act provided, " as soon
as the same is completed, shall be left at the office of said board
daily, during ordinary business hours, for thirty days, for the

free inspection of all parties interested, and notice that the same is so open for inspection for such time and such place shall be published by said board daily, for twenty days, in two daily newspapers printed and published in said city and county." (Section 7.)

Any person interested in any piece or parcel of land situated within the district defined and described in section three of the act, or in any of the lands taken for Dupont Street, or in any improvements damaged by the opening of that street, feeling himself aggrieved by the action or determination of the board, as shown in its report, was entitled, at any time within the thirty days mentioned in section seven of the act, to apply by petition to the County Court of the city and county of San Francisco, setting forth his interest in the proceedings had before the board, and his objections thereto, for an order requiring it to file with that court its report, and such other documents or data as may be pertinent thereto, in its custody and used by it in preparing the report. "Said court is hereby authorized and empowered to hear said petition, and shall set the same down for a hearing within ten days from the date of the filing thereof; and the party filing said petition shall, on the day he files the same, serve a copy thereof on at least one of the members of the Board of Commissioners; and said board may appear by counsel, or otherwise, before said court, in response to said petition. Said board may file a written answer to said petition with said court. Testimony may be taken by said court upon said hearing, and the process of the court may be used to compel the attendance of witnesses, and the production of books, or papers or maps in the custody of said board, or otherwise. It shall be in the discretion of said court, after hearing and considering said application, to allow said order or deny the same; and if granted, a copy thereof shall be served on said board, and it shall proceed to obey the same according to the terms of the order to be prescribed by the court. But in case no such petition shall be filed with said county court within the time above limited for the filing thereof, the said report shall be presented by the said board to the said county court, with a petition to the

court that the same be approved and confirmed by the court. The court shall have power to approve and confirm said report, or refer the same back to said board, with directions to alter or modify the same in the particulars specified by the court in the order referring the same back, and thereupon the said board shall proceed to make the alterations and modifications specified in the order of said court. The alterations and modifications aforesaid being made, the report shall be again submitted to the said court, and if the court, upon examination, shall find that the alterations and modifications have been made according to the directions contained in said order, the said court shall approve and confirm the same by an order to be entered on its minutes; but if the said board shall have neglected or failed to make the alterations and modifications set forth in the order of reference, the court may again refer the report back to said board, and so on until its original order of alteration and modification shall have been complied with by said board, and the said court shall then approve and confirm said report." (Section 8.)

All damages, costs and expenses arising from, or incidental to, the widening of the street, being fixed and determined by the final confirmation of the report, as in the act provided, the board was to issue bonds of the city and county of San Francisco, in such form as they might prescribe, in sums of not less than one thousand dollars each, for such an amount as shall be necessary to pay and discharge all such damages, costs and expenses; the bonds to be known and designated as the "Dupont Street Bonds," and payable in twenty years from their date, unless sooner redeemed, as in the act provided, bearing interest at seven per cent per annum, payable semi-annually at the office of the treasurer of the city and county, such interest being evidenced by coupons attached to each bond, and signed by the president of the board. (Section 9.) Any person or persons to whom damages were awarded, according to the provisions of the act, upon tendering to the board a satisfactory deed of conveyance to the city and county of the land for which damages were so awarded, was entitled to have bonds in an amount equal to the sum of

the damages awarded for the lands so conveyed, together with damages for the improvements thereon or affected thereby; and the bonds so issued and delivered were to be in full compensation for all damages for lands and improvements taken and improvements injured, as contemplated in the act. (Section 10.)

The mayor, auditor and treasurer were authorized to sell bonds sufficient to realize money enough to meet and discharge all expenses and damages arising from the widening of the street, established by the report as finally confirmed. The money arising from their sale was to be known and designated as the "Dupont Street Fund." As soon as the bonds were converted into money, as in the act provided, the Board of Commissioners were required to give public notice, in two daily newspapers published in the city and county, for at least ten days, that they were prepared to pay in full all damages and liabilities fixed by the final report of the board (not then already discharged); and upon receiving from the parties entitled thereto the proper deeds or proper acquittances from those entitled to compensation, the board were to give to such party an order upon the treasury for the amount shown to be due, payable out of the "Dupont Street Fund." (Section 11.) Provision was made by the act for the levy and collection annually, at the same time and in the same manner as other taxes are levied and collected in the city and county, of taxes upon the lands described in the third section sufficient to pay the interest on the bonds as it matured, and, also, sufficient to raise one-twentieth of the principal, and to constitute a sinking fund for the redemption of the bonds; such taxes to be collected out of the land only, to be adjusted and distributed according to the enhanced values of the lands as fixed in the final report of the board, and to go into the hands of the treasurer of the city and county, as part of the "Dupont Street Fund." (Section 13.) It was made the duty of the Board of Commissioners to cause block books to be prepared, exhibiting the district declared by the act to be benefited by the opening of Dupont Street, according to the blocks or fractional parts of blocks thereof, and the subdivisions, according to which

the benefits were fixed and determined; also, in convenient book form, descriptions of the several subdivisions shown on such books — the amount of benefits or enhanced value to the subdivision, as established by the confirmed report, by reason of the opening of the street, being set opposite to each description of the several subdivisions. The block books and description note books, being certified by the board, were to be held by the assessor of the city and county of San Francisco as a part of the records of his office until all the bonds issued in pursuance of the act were redeemed. (Section 14.)

In case any person to whom, or in whose favor, damages were awarded by the board should fail or neglect, for the period of twenty days after there were funds to the credit of the "Dupont Street Fund" sufficient to pay such damages, to ask for and receive from the board a warrant for the sum so awarded, it could draw a warrant upon the treasurer in favor of such owner or owners, and deposit the same with the clerk of the city and county, accompanied by a certificate of the treasurer that the warrant so drawn and deposited had been registered by him, and that there were funds in his hands to pay the same; and thereupon the board, on demand, was entitled to an order of the county court authorizing it to enter upon such piece of land and remove obstructions therefrom, and to throw open the lots so described as part of the street, and an execution could issue to the sheriff, commanding him to put the board in possession of such lot for the city and county; and thereafter, upon delivering to the county court a sufficient deed conveying said lot of land to the said city and county, the party so dispossessed was entitled to receive the value of the land so conveyed, or the warrant of the board therefor. (Section 16.) If the owners of any lands taken for the street failed or neglected, within the space of thirty days after the money was in the treasury to pay the same, to remove the buildings and improvements from such lands, and deliver possession of said lands to said board, on tender to them respectively of the sums awarded as the value of such lands, buildings or improvements, then the board could, at any time thereafter, sell such buildings and improvements at

public auction to the highest bidders, to be removed by the respective purchasers thereof; the sums bid at such sales to be paid in cash or in the warrants of the board; and if at s' ᴜ.. auction there shall be no responsible bidder for such improve- ments, with the obligation to remove them within the time specified in the terms of sale, the board was to remove the same at the cost of the "Dupont Street Fund." (Section 17.) The street, when widened, was to be sewered, graded, side- walked and paved by the municipal authorities; the expense of such work to be assessed upon the adjacent property, or borne by the city and county, in the same manner as if the street remained of its original width. (Section 18.) The railway tracks in the street were required to be removed and changed to the centre of the same by the street railroad com- panies then using tracks therein. (Section 19.)

The last section of the act, section 22, provided that the completion of the work should be deemed an absolute accept- ance, by the owners of all lands affected by the act and by their successors in interest, of the lien created by it upon the several lots so affected, and operate as an absolute waiver of all claim in the future upon the city and county of San Fran- cisco, and their successors in interest, for any part of the debt created by the bonds authorized to be issued. "This shall be regarded as a contract between said owners and the holders of said bonds and said city and county, and this provision shall be stated on the face of the bonds." Stat. California, 1875–6, c. 326, p. 433.

*Mr. Joseph H. Choate* for plaintiffs in error. *Mr. John Gar- ber* and *Mr. T. B. Bishop* also filed a brief for same.

*Mr. A. H. Garland* (with whom were *Mr. John Mullan* and *Mr. H. J. May* on the brief) for defendant in error.

MR. JUSTICE HARLAN, after making the above statement, delivered the opinion of the court.

The Chief Justice of the Supreme Court of California, under its order, made his certificate to the effect that in this suit and

appeal there was drawn in question the validity of the above act of March 23, 1876, and the authority exercised and the proceedings taken under it, on the ground that the statute and said authority and proceedings were repugnant to the Fourteenth Amendment to the Constitution of the United States, and that the decision of that court was in favor of their validity.

The provisions of the statute, to which we have referred, sufficiently indicate its scope and effect, and enable us (without referring to others that relate to matters of mere detail) to determine whether or not the act, upon its face or by its necessary operation, is repugnant to that clause of the Constitution declaring that no State shall deprive any person of property without due process of law.

We have seen that the statute defined the district benefited by the widening of Dupont Street, and upon which the assessment to meet the cost of the work was to be imposed; made it a condition precedent to the proposed improvement that it should be declared by resolution or order of the Board of Supervisors of the city and county to be expedient; directed that, after the passage of such a resolution or order, the Dupont Street Commissioners should publish, for not less than ten days, in two daily papers in San Francisco, a notice informing property owners along the line of the street of its organization, and inviting all persons interested in property sought to be taken, or that would be injured by the widening of that street, to present descriptions of their respective lots, and a statement in writing of their interest in them; allowed the majority in value of owners of property within the district embracing the lands of the plaintiffs, at any time within thirty days after the last publication of the above notice, by written protest filed with the Board of Commissioners, to defeat altogether the proposed widening of Dupont Street; required the board to prepare a written report showing the description and actual cash value of the several lots and subdivisions of land and buildings included in the land proposed to be taken for the widening of the street, the value and damage determined upon for the same respectively and the amount in which,

according to its judgment, each lot had been or would be ben-
efited by reason of the widening of the street, relatively to the
benefits accruing to other lots of land within the designated
district; and directed such report, as soon as completed, to be
left at the office of the board daily, during ordinary business
hours, for the free inspection of all persons interested, and
notice of the same being open for inspection at such time and
place published by the board daily, for twenty days, in two
daily newspapers printed and published in the city and
county.

But this was not all. For any person interested, and who
felt himself aggrieved by the action or determination of the
board, as indicated by its report, was permitted, at any time
within the above thirty days, to apply by petition to the
county court of the city and county, showing his interest in
the proceedings of the Board of Commissioners, and his objec-
tions thereto, for an order that would bring before that court
the report of the board, together with such pertinent docu-
ments or data as were in its custody, and were used in pre-
paring its report. It was made the duty of the party filing
the petition to serve, on the same day, a copy thereof on at
least one of the members of the Board of Commissioners, who
were at liberty to appear by counsel, or otherwise, and make
answer to it. The court was also empowered to hear the peti-
tion, and set it down for hearing within ten days from its
being filed. Provision was made for the taking of testimony
upon the hearing, and the court was authorized to use its pro-
cess to compel the attendance of witnesses and the production
of books, papers or maps in the custody of the board, or
otherwise. The discretion given to the court, after hearing
and considering the application, to allow or to deny the order
prayed for was, of course, to be exercised judicially, according
to the showing made by the petitioners. And that complete
justice might be done, the court was invested with power, not
simply to approve and confirm the report of the board, but to
refer it back with directions to alter or modify the same in the
particulars specified by the court. Until such alterations and
modifications were made, the court was under no duty to

approve or confirm the report; and until it was approved and confirmed, the board was without authority to proceed at all in the work committed to it by the statute.

Were not these provisions in substantial conformity with the requirements of "due process of law" as recognized in the decisions of this court? In *Davidson* v. *New Orleans*, 96 U. S. 97, 104, it was said that "whenever, by the laws of a State, or by state authority, a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." So in *Hagar* v. *Reclamation District*, 111 U. S. 701, 708: "Undoubtedly, where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But, where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax and the manner in which its amount is determinable. . . . As stated by Mr. Justice Bradley in his concurring opinion in *Davidson* v. *New Orleans*, 'in judging what is due process of law, respect must be had to the cause and object of the taking, whether the taxing power, the power of eminent domain or the power of assessment for local improvements, or some of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law;" but if found to be arbitrary, oppressive and unjust, it may be declared to be not due process of law.'" Of the different kinds of taxes which a State may impose, and of which from their nature no notice can be given, the court, in that case, enumerates poll taxes,

licenses (not dependent upon the extent of business) and specific taxes on things, persons or occupations. p. 709.

These principles were reaffirmed in *Kentucky Railroad Tax Cases*, 115 U. S. 321, 331, and in *Spencer* v. *Merchant*, 125 U. S. 345, 355, in the latter of which cases it was said that "the legislature, in the exercise of its power of taxation, has the right to direct the whole or part of the expense of a public improvement, such as the laying, grading or repairing [and, equally, the widening] of a street, to be assessed upon the owners of lands benefited thereby;" and that, "the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion;" also, that, "if the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

Tested by these principles, the statute providing for the widening of Dupont Street cannot be held to be repugnant to the constitutional requirement of due process of law. The notice by publication to all who owned property liable to be assessed for the cost of that improvement was appropriate to the nature of the case, and was reasonable in respect to the length of time prescribed for the publication. And ample opportunity was given to all persons interested to test in a court of competent jurisdiction the fairness and legality of any assessment proposed to be made upon their property for the purposes indicated by the statute. That court had power to require such alterations or modifications of the report of the Board of Commissioners as justice demanded. It was not bound to approve any report that did not conform to its judgment as to what was right; and without such confirmation the board could not proceed in the execution of the work contemplated by the legislature.

If we had any doubt of the correctness of these views, we should accept the interpretation which the highest court of the State places upon the statute. When the inquiry is whether a state enactment under which property is proposed

to be taken for a public purpose accords full opportunity to the owner, at some stage of the proceedings involving his property, to be heard as to their regularity or validity, we must assume that the inferior courts and tribunals of the State will give effect to such enactment as interpreted by the highest court of that State. The Supreme Court of California, speaking by Mr. Justice Temple, in this case, has said: "We are not considering here a statute which is silent as to the hearing. The provisions in question were undoubtedly inserted in view of the constitutional requirement, and for the purpose of affording that opportunity to be heard, without which the law would be void. To give the statute the construction contended for would not only defeat the evident purpose, but would make the whole proceeding farcical. And I must confess, it seems to me, it requires great industry in going wrong, in view of all the circumstances, to conclude that such can be the meaning. Inapt words certainly are found in the section, [§ 8,] but it would not have provided so elaborately for a thorough investigation for grievances if it were not intended that redress should be awarded. The statute has apparently been patched and tinkered after it was first drawn, and incongruous matter injected into the body of it. But it still provides for a full hearing, and that the court may alter and modify. And it seems that such action is to be based upon the hearing provided for. The word 'discretion' is used in various meanings, but here, evidently, it was intended to submit the whole matter to the sound judgment of the court to be exercised according to the rules of law." 72 California, 404, 421.

It is said that the county court was without power to adjudge the statute to be unconstitutional, and had no discretion, except to confirm the report, or to require it to be altered or modified. We do not perceive that this is a material inquiry, so long as the statute is not repugnant to the constitution. But we do not admit that the county court was without power to hold it to be unconstitutional and void — if such was its view — and to decline, upon that ground alone, to confirm any report that the Board of Commissioners might have filed. The judge or judges of that court were obliged, by their oath

of office, and in fidelity to the supreme law of the land, to refuse to give effect to any statute that was repugnant to that law, anything in the statute or the constitution of the State to the contrary notwithstanding. . Upon this subject, as well as in respect to the power of the county court to consider objections of every nature that might be made to the confirmation of any report from the Board of County Commissioners, the Supreme Court of the State said: "The statute does not expressly authorize the court to pass upon the validity of the act, or whether the Board of Supervisors had passed the necessary resolution, or the notices had been given. But the power to do this is necessarily involved in the power of the court to act at all. It may be that the court could not pass upon these questions upon which its jurisdiction depended, so as to conclude all inquiry even on a collateral attack. It was a constitutional court, invested with jurisdiction by the constitution of special cases. The parties had full notice of the proceeding, and of their right to be heard." Again: "The statute places no limit upon the objections which might be made by those deeming themselves aggrieved by the action or determination of the board as shown in the report. As all their determinations which could affect any person were required to appear in the report, this would seem to include all possible objections. The determination, for instance, might have been objected to, because, the act being invalid or the notices not having been given, the board had no right to proceed to act at all. If this contention were sustained, the result would have been that the court would not have confirmed the report, and the proceedings would have ended without fixing a charge upon the property of plaintiffs. They could have complained that a wrong basis was adopted in estimating damages or benefits; that the estimated cost was too much, or for any misconduct of the commissioners which could affect them, or that the cost exceeded the estimated benefits, and it does not seem to me that the court would have found any difficulty in granting relief." 72 California, 404, 422.

It is contended, however, that the act was so *administered* as to result in depriving the plaintiffs of their property with-

out due process of law. This contention is material only so far as it involves the inquiry as to whether the tribunals charged by the statute with the execution of its provisions acquired jurisdiction to proceed in respect to the lots or lands in question and the owners thereof. Jurisdiction was, of course, essential before the plaintiff's property could have been burdened with this assessment. But errors in the mere administration of the statute, not involving jurisdiction of the subject and of the parties, could not justify this court, in its reëxamination of the judgment of the state court, upon writ of error, to hold that the State had deprived, or was about to deprive, the plaintiffs of their property without due process of law. Whether it was expedient to widen Dupont Street, or whether the Board of Supervisors should have so declared, or whether the Board of Commissioners properly apportioned the costs of the work or correctly estimated the benefits accruing to the different owners of property affected by the widening of the street, or whether the board's incidental expenses in executing the statute were too great, or whether a larger amount of bonds were issued than should have been, the excess, if any, not being so great as to indicate upon the face of the transaction a palpable and gross departure from the requirements of the statute, or whether upon the facts disclosed the report of the commissioners should have been confirmed, are, none of them, issues presenting Federal questions, and the judgment of the state court, upon them, cannot be reviewed here.

Upon the issue as to whether the Board of Commissioners and the county court acquired jurisdiction to proceed in the execution of the statute, the evidence is full and satisfactory. The Board of Supervisors of the city and county, by resolution within sixty days after the passage of the act, declared it to be expedient and necessary that Dupont Street should be widened in accordance with the statute. § 2. In conformity with this declaration the mayor, auditor and county surveyor of the city organized as a Board of Dupont Street Commissioners, and by notice, published for not less than ten days, in two daily papers printed in San Francisco, informed prop-

erty owners along the line of that street of such organization, and invited all persons interested in property sought to be taken, or which would be injured by the widening of Dupont Street, to present to it maps and plans of their respective lots, and a written statement of the nature of their claim or interest in such lots. § 6. The Board of Commissioners caused to be prepared and adopted maps, plans and diagrams, and made the written report required by section 7 of the act; and such report was left at the office daily, during ordinary business hours, for thirty days, for the free inspection of all interested, notice that such report was so open for inspection for such time and at such place being published by the board daily, as required by that section, in two daily newspapers printed and published in the city and county of San Francisco. Various parties who were interested in and affected by the widening of the street brought before the county court of the city and county, by petition filed in due time, the written report of the commissioners and all documents in their possession. The hearing of these petitions resulted in certain alterations and modifications of the report, and, on the 20th of December, 1876, the county court made its final order of confirmation. That order, after reciting in detail the performance of all the acts required by the statute in execution of its provisions, proceeded : "And it further appearing to the court that all the proceedings taken by said board have been duly and legally taken, and that each and all of the acts, matters and things provided by said act to be done and performed by said board in the premises, have, on the part of said board, been duly and regularly done and performed in the form, at the times and in the manner prescribed by said act, and said board having this day brought the said report, as so modified, into this court, and duly filed a petition in this court praying that said report, as so modified by this court, be confirmed and approved : Now, therefore, after hearing all the proofs in the said matter, and on motion of Wm. Pierson, Esq., attorney for said Board of Dupont Street Commissioners, and no one objecting thereto, and after full consideration thereof, it is ordered, adjudged and decreed that the said report of the said

Board of Dupont Street Commissioners, in the matter of the widening of Dupont Street, filed in this court on the 27th day of October, A.D. 1876, as modified by said board under the orders of this court heretofore made herein, and as the same now exists on file herein, be and the same is hereby fully and in all respects approved and confirmed. And it is further ordered, adjudged and decreed that the lands described in the volume of said report, entitled 'Report Damages Widening Dupont Street,' be, and the same are hereby taken and dedicated for an open and public street, and for the widening of said Dupont Street, between Bush and Market streets, and that the title thereto, and every part thereof, as particularly described in said volume of said report, is vested in the city and county of San Francisco for the purpose of said street forever, upon the payment in the manner prescribed by said act, to the owners of each piece or parcel of such land, and to the owners of the improvements thereon, or upon the deposit or tender as prescribed by said act, of the amounts fixed and determined in and by said volume of said report." Subsequently to this order, the street was widened in accordance with the report, and, as widened, is in public use, the special benefits of the improvement, whether more or less, being enjoyed by the plaintiffs, and by others in like situation.

It is contended that the notices required by the different sections of the act to be published for a designated number of days were not so published. This contention rests, principally, upon the ground that the notices, on some of the days appeared in a "Supplement" of some of the newspapers, and not in the body of the paper where reading matter was usually found. There is no force in this objection, and it does not deserve serious consideration.

Other objections have been urged by the plaintiffs which we do not deem it necessary to consider. For instance, it is said that the mayor of the city of San Francisco, one of the Board of Commissioners, was himself the owner of a lot on Dupont Street, and, for that reason, was incompetent to act as one of the Board of Street Commissioners; that some of the alterations and modifications of the report of the com-

missioners made upon the hearing in the county court of the petitions filed by different parties were so made under private arrangements between the commissioners and those parties, of which other property owners along Dupont Street had no notice, and by which such owners were injuriously affected; that the Board of Commissioners selected experts to "assist" it in estimating the damages for property taken and injured by the proposed improvement and the benefits accruing therefrom, and that the report of those experts was accepted by the commissioners, without themselves making or attempting to make an appraisement of damages or an assessment of benefits under the statute; and that such appraisement and assessment were not in fact correct, fair or just, but were fraudulent. In respect to all these and like objections, it is sufficient to say that they do not necessarily involve any question of a Federal nature, and, so far as this court is concerned, are concluded by the decision of the Supreme Court of California.

We are of opinion, upon the whole case, that the Supreme Court of California correctly held that the plaintiffs had not been, or were not about to be, deprived of their property, in violation of the Constitution of the United States.

*Decree affirmed.*

Mr. Justice Field. I dissent.