## In re BLAINE'S ESTATE.

(First Division. Juneau. May 8, 1922.)

No. 2170.

1. **Constitutional Law** ⬅⬎309—**Taxation** ⬅⬎859(1)—**Inheritances.**

Section 7, c. 60, Sess. Laws of Alaska 1919, provides for the appraisal of estates for the purpose of inheritance taxation, upon giving not less than 30 nor more than 60 days' notice, to be served upon the administrator or executor. Appellant urges that the act is unconstitutional, in that no notice to the heirs, legatees, or devisees of decedent is provided for in the act, of the time and place of the appraisal. *Held*, that the tax is not a tax on real property, but it is a succession or privilege tax, and notice to the administrator or executor is sufficient. The statute is constitutional.

2. **Taxation** ⬅⬎856—**Legacy, Inheritance, and Transfer Taxes.**

An inheritance tax prescribed by chapter 60, Sess. Laws of Alaska 1919, is not a tax on property as such, but upon the privilege or succession.

3. **Taxation** ⬅⬎868(1)—**Inheritance Tax—Situs of Property.**

The universal rule has been that, although personal property may be located in another state than that of the domicile of decedent at the time of his death, the situs, for the purpose of imposing an inheritance tax, is in the state or territory that was the domicile of the decedent, and where the primary administration is had.

⬅⬎See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Taxation** ⬤═══895(4)—**Appraisement for Inheritance Tax.**

It is imperative on the probate court, under the statute in Alaska (chapter 60, Sess. Laws of Alaska 1919), to hear and determine the value of the property transferred as of the date of the death of the decedent transferring the property, and automatically the tax is assessed on that valuation. It may work a hardship in certain cases, as where the property has diminished in value.

This matter arises on the appeal of B. M. Behrends, executor of the last will and testament of James C. Blaine, deceased, from an appraisement of the estate of decedent, Blaine, made by the probate court, Juneau precinct, of this division and territory, in pursuance of section 7, chapter 60, Session Laws of Alaska 1919, entitled "An act providing for taxation of and fixing the rate of taxation on inheritances, devises, bequests," etc., approved May 5, 1919.

The appellant urges, as grounds of appeal:

(1) That the act referred to is unconstitutional, in that no notice to the heirs, legatees, or devisees of decedent is provided for in the act, of the time and place of the appraisement for the purpose of inheritance tax.

(2) That the probate court is not authorized to levy an inheritance tax on certain personal property situated without the territory and in foreign jurisdiction.

(3) That certain bonds, known as "Central Building bonds," issued by a corporation organized under the laws of Washington, are subject to taxation under the inheritance tax law of that state, and that it would be double taxation and manifestly unjust to subject them to a like tax under the laws of this territory, and that such tax would be void.

(4) That through no fault of the executor the property devised has diminished in value since the death of the testator, and that it would be inequitable and unjust, and against the policy of the law, to appraise the estate as of the date of the death of the testator.

R. E. Robertson, of Juneau, for appellant estate.*

John Rustgard, Atty. Gen., for the Territory.

REED, District Judge. As to the constitutionality of the statute, appellant urges that section 7 of the act, which pro-

⬤═══See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vides for the fixing of a time of appraisal of the estate by the probate judge, for the purpose of inheritance taxation, of not less than 30 nor more than 60 days after the filing of an inventory, does not provide for any notice to the heirs, legatees, or devisees, who are the persons vitally interested in the tax, and that, there being no notice provided in the act to them of the date of the appraisement, the act is void, as being in contravention of the Fourteenth Amendment to the Constitution of the United States.

The section of the act referred to reads as follows:

"Upon filing of the inventory required by section seven (five) of this act, the court shall by order, fix a time at which he will appraise the estate for the purpose of inheritance taxation, which shall be not less than thirty (30) days nor more than sixty (60) days from the date of the order. A copy of such order shall, within three (3) days thereafter, be served upon the administrator or executor."

The learned Attorney General contends that, as this is a tax, not upon property itself, but upon the right of succession, notice to the heirs or devisees or legatees is not necessary, or, if so, that there is a substantial compliance with such requisite by the requirement to give notice to the executor or administrator who stands in the relation of trustee to the distributees of the estate.

In reviewing the act, it appears that section 1 provides that a tax—

"be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation," etc., "in the following cases:

"(1) When the transfer is by will or by intestate laws of this territory from any person dying possessed of the property while a resident of the territory."

Then follow four other classes of cases falling within the statute and not necessary to refer to herein.

Section 2 provides for the computation of the tax and exemptions therefrom, classifies the tax with reference to the inheritance laws, and provides for the rates of taxation on each class.

Section 3 provides that the tax shall take effect upon the death of the person and become due and payable as soon as the amount thereof is determined.

Section 4 provides that the territory shall take the status of a general creditor with reference to the estate, and be vested with all the rights and privileges of a creditor, except that it shall not be necessary for it to file any claim thereof with the executor or administrator.

Sections 5 and 6 require the executor or administrator, within 30 days after appointment, to file an inventory of the estate, with classification in the probate court of all property coming into his possession which inventory shall be in addition to the inventory required by the general probate laws; and section 7 provides for the setting of the time for the appraisement or valuation of the estate on the inventory, and notice to the executor or administrator, as above set forth.

Section 8 provides for the appraisement and hearing and determination of questions of fact with relation to the valuation of the estate as determined under the general probate law, and further provides that evidence thereof may be received upon all matters pertinent to the extent of the property of the deceased, the manner of transfer, and the value thereof.

Section 9 provides for an appeal from the decision of the probate court making a valuation of the estate, and also provides for the calculation of the tax on trust transfers of estates for life or years or in expectancy.

Section 10 provides that the costs and disbursements incurred in the determination of the tax shall be paid by the estate.

Section 11 provides that the administrator or executor or trustee, as the case may be, shall pay the tax within 30 days after the valuation and fixation thereof.

Section 12 authorizes and empowers the executor to sell the property of the estate, to pay the tax in the same manner as authorized by law, to pay other debts of decedent, and further provides that no decree of distribution of the estate shall be valid until the tax is paid.

Section 13 provides that interest shall be paid upon the amount of the tax, according to certain rates, depending upon the delay in the payment of the tax.

Section 14 authorizes citation by the probate judge, on the request of the territory to issue to any person for the discovery of assets of the estate, subject to taxation under the law.

Thus it will be seen that nowhere in the statute is there any

recognition of a vested right of the heirs, legatees, or devisees. The theory of the statute seems to have been that the territory stands in the same position with reference to the estate as a creditor of the deceased, and that the tax becomes a claim, payable out of the assets of the estate in the same manner as a creditor's claim, with the exception that, for the purpose of determination thereof, the probate court, after notice to the executor, shall fix the amount thereof.

The tax provided for in the statute is clearly what is denominated an inheritance tax; that is, a tax upon the privilege of inheriting property or receiving it as a legacy, or, as said by Mr. Justice McKenna in Magoun v. Illinois Trust & Savings Bank, 170 U. S. 288, 18 Sup. Ct. 594, 42 L. Ed. 1037, it is not a tax upon property, but on the right of succession. In Gelsthorpe v. Furnell, 20 Mont. 299, 51 Pac. 267, 39 L. R. A. 170, Mr. Justice Hunt, in a very exhaustive and elaborate opinion, construing the Montana statute of 1897, providing for an inheritance tax, says:

"The better view, as laid down by the authorities, is that a collateral inheritance or succession tax is a duty or bonus exacted in certain instances by the state upon the right and privilege of taking legacies, inheritances, gifts, and successions passing by will, by intestate laws, or by any deed or instrument, made inter vivos, intended to take effect at or after the death of the grantor. The burden or the tax is not imposed upon the property itself, but upon the privilege of acquiring property by inheritance. In nearly all inheritance tax laws the statutes provide for appraising the property to be inherited, but the object of such valuation is not to tax the property itself. It is to arrive at a measure of price by which the privilege of inheriting can be valued,"

—citing a large number of authorities.

Counsel for the executor, while raising no objection to the authority of the territory to impose the tax, seriously insists that the law is void, in that it is in conflict with the Fourteenth Amendment to the Constitution of the United States, which prohibits the depriving of any person of life, liberty, or property without due process of law, and to that end argues that the act fails to designate any notice to the parties interested, so that they may protect their rights; that the amount of the tax is based upon a valuation or appraisement made by the probate judge of property inventoried by the executor or administrator, and that this appraisement and fixation of the

tax is on each beneficiary's interest, and is made by the probate judge after a hearing, judicial in its nature, of which no notice was given the parties interested, other than the executor or administrator, and therefore without opportunity for them to be heard, and for that reason he is taking the property of such parties without due process of law.

Counsel, in his very elaborate and persuasive argument, cites, in support of his contention, the case of Ferry v. Campbell (Jan. 22, 1890), 110 Iowa, 290, 81 N. W. 604, 50 L. R. A. 92, which case is squarely in point. The statute of the state of Iowa (Acts 26th Gen. Assem. c. 28) considered in the case referred to, provides, in the first section that:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the intestate laws of this or any other state, or by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor, or donor, to any person in trust or otherwise, other than to or for the use of the father, mother, husband, wife, lineal descendant," etc., "shall be subject to a tax of five per centum of its value, above the sum of $1,000, after the payment of all debts, for the use of the state; and all administrators, executors, and trustees, and any such grantee under a conveyance, and any such donor under a gift, made during the grantor's or donor's life, shall be respectively liable for all such taxes to be paid by them respectively, except as herein otherwise provided, with lawful interest as hereinafter set forth, until the same shall have been paid. The tax aforesaid shall be and remain a lien on such estate from the death of the decedent until paid."

This is followed by provisions requiring the executor to make and file a separate inventory of the real estate subject to the tax, an appraisement of the realty by appraisers, and the manner of estimating the tax to be paid on the property.

Section 3 provides that the real estate of the deceased subject to the tax shall be appraised within 30 days next after the appointment of the executor, and the tax thereon, calculated on the appraised value, shall be paid within 15 months after the approval of the appraisement. The appraisement made of personal property, by the regularly appointed appraisers, seems to be made the basis for a levy of a tax on that kind of property. No notice to the heirs, legatees, or devisees is provided for or required, and for that reason it was urged in that case

that the act was unconstitutional, because it resulted in a deprivation of property without due process of law.

The court then proceeds to discuss the case, and the question of notice to heirs, as follows, after considering what is meant by due process of law, within the meaning of federal and state Constitutions:

"The statute says that 'all the property within the jurisdiction of the state which shall pass by will or by the statutes of inheritance of this or any other state ＊ ＊ ＊ shall be subject to a tax of five per centum of its value. ＊ ＊ ＊ for the use of the state, ＊ ＊ ＊ and all administrators, executors,' etc., 'shall be liable for all such taxes to be paid by them, ＊ ＊ ＊ and the tax aforesaid shall be and remain a lien on such estate from the death of the decedent until paid.' ＊ ＊ ＊ If the statute provided that thereafter certain persons should not be permitted to take by will under the statute, except on condition that they pay a tax fixed by an appraisement of the property, there would be more reason for saying that such a tax, being strictly upon the right of succession, and not upon property in which the heir or legatee had an interest, might be levied and collected without notice to the parties in interest. But such is not the case. The property, whether disposed of by will or descending under the statutes of the state, became the property of the devisee, legatee, or heir immediately upon the death of the testator or ancestor; and the measure of liability for the tax is fixed by an appraisement of the property, made after the testator's death. Sustaining the proposition that an heir has a vested interest in the property of his ancestor upon the death of such ancestor, see Weaver's Estate v. State, ＊ ＊ ＊ 81 N. W. 603, and Moore v. Gordon, 24 Iowa, 158. The collateral inheritance tax statute imposes a burden upon this interest which is fixed and determined by an appraisement of the property, and no provision for notice to the heir or devisee, or for opportunity to be heard, is made. Call this tax what you will, it is evident that it deprives or may deprive a citizen of his property without notice and opportunity to be heard. Doubtless it is not a property tax in the strict sense of that term, but the amount is not fixed and certain, as it is where a specific license or occupation tax is imposed. In such cases, as said in the Gatch Case, there is nothing left to inquire into and determine. Special assessments for improvements are not, strictly speaking, taxes; but it is held that notice of proceedings in such cases, and opportunity for a hearing of some description, are matters of constitutional right. As said by Judge Cooley in his work on Taxation, at pages 255, 256: 'It is not to be presumed that constitutional provisions carefully framed for the protection of property were intended or could be construed to sanction legislation under which officers might strictly assess one for any amount in their discretion without giving an opportunity to contest the justice of the assessment. When the assess-

ment is based upon value or benefits, whether it be a tax 'on prop-erty or succession tax, and that value is to be ascertained by ap-praisement, assessors, or other tribunal which involves inquiry, no-tice and an opportunity for hearing are essential to the validity of the proceedings.' "

The reasoning in this case seems to be based upon the prop-osition laid down by the learned judge, that the tax is upon the property or the interest of the heir or legatee and not upon the right to inherit or take by succession. The learned judge in effect says that under the rulings in that state and as recog-nized by the terms of the statute itself, the heir has a vested interest in the property of his ancestors, and that, as the in-heritance tax is fixed and determined by an appraisement of the property or interest of the heir, it imposes a burden upon this interest, and, as no provision for notice to the heir is made in the statute, it imposes a burden on that interest, without notice to the heir or any opportunity to be heard in opposition, and is therefore unconstitutional.

As upholding the view of the Iowa courts, counsel for ap-pellant cites many opinions of other courts, all of which cita-tions, however, are from states in which provision is made in the statute for notice to the interested parties, and counsel deduces from them the proposition that notice of appraise-ment to the heirs or devisees is necessary.

The Attorney General, on the other hand, contends that this decision cited is not in point; that it is contrary to the weight of authority; that the notice provided for in our statute to the administrator or executor is sufficient to comply with the provision of the Fourteenth Amendment to the Constitution of the United States, in that notice is given to the executor, who is the trustee for the heirs.

The weight of authority is that a tax such as provided for under our statute is a tax on the right of succession, and one which the Legislature constitutionally had a right to impose, and is not a tax on an interest of the heir or devisee. In other words, the weight of authority is that the tax is a condi-tion imposed by the territory upon which the right of the heir or devisee to inherit depends. If this is so, then the tax is not depriving a person of property without due process of law.

It is well settled that the state has a constitutional right to prescribe the conditions on which property may pass by in-

heritance. The right has been recognized and upheld by federal and nearly all state courts, and cannot now be gainsaid. If, then, the tax on the inheritance is a condition imposed upon the right of succession lawfully imposed by the Legislature, it does not become a burden imposed upon the property of the heir or legatee. If this is the case, the reasoning in the Iowa case, above quoted, is faulty. Counsel for executor, in his very able and comprehensive brief, laments the lack of authorities on the point; but there is one case directly in point which, in a succinct way, coincides with my view of the question. In the case of Union Trust Co. v. Durfee, 125 Mich. 493, 84 N. W. 1101, the Supreme Court of the state of Michigan, in discussing the inheritance tax law of that state, say:

"The act, as a whole, indicates its character to be a succession or privilege tax, and not a tax upon property. It is said the act is void, because it does not provide for a personal notice, and opportunity to resist the assessment, and that it therefore takes private property without due process of law. This loses sight of the fact that it is not taking the property of the legatee, but is imposing a condition upon the acquisition of property."

In Magoun v. Illinois Trust & Savings Bank, 170 U. S., at page 288, 18 Sup. Ct. at page 596 (42 L. Ed. 1037), the Supreme Court, in referring to the inheritance tax, say:

"The constitutionality of the taxes has been declared, and the principles upon which they are based explained, in U. S. v. Perkins, 163 U. S. 625, 628, 16 Sup. Ct. 1073, and numerous other cases. * * * It is not necessary to review these cases, or state at length the reasoning by which they are supported. They are based on two principles: (1) An inheritance tax is not one on property, but one on the succession; (2) the right to take property by devise or descent is the creature of the law, and not a natural right—a privilege—and therefore the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions."

Our statute is undoubtedly a succession or privilege tax, and, while it is true that under our general law realty passes directly to the heirs, nevertheless it is subject to the possession of the executor and administrator, pending probate proceedings and under this statute, there can be no valid distribution or vesting of any right of possession in the heirs of any portion of the estate until the tax is paid. It is made a con-

6 A.R.—36

dition before the vesting of any right to the heir, that the tax be paid. In other words, the final distribution of the estate to the heirs, devisees, or legatees ·is conditioned upon the payment of the tax imposed.

This being my view of the matter, I am of the opinion that notice of appraisement to the heir or devisee is not necessary, and that the statute is constitutional in that respect. I am further of the opinion that, even if notice were necessary for a compliance with the due process of law provision of the Constitution of the United States, the statute provides for sufficient notice, in that it provides for notice to the executor or administrator. He, to a certain extent, is trustee for the heirs, while representing the decedent to the extent that he is to discharge the debts and carry out the decedent's directions, if ascertainable from a valid testament. He is further required to preserve and deliver the balance of the estate to those persons rightfully entitled thereto. He represents the creditors to the extent of dealing equitably with them, under the direction of the probate court, not only to adjust their claims and pay them from the assets of the estate, but also to represent the heirs, devisees, and legatees as to guarding their interests and turning over to them what is lawfully due them after the expiration of his trust. It naturally follows that, if he is advised of the condition upon which the heirs or the testamentary devisees or legatees are to succeed to the estate, he advise his cestui que trusts. If they are not satisfied with the finding of the probate court, by section 13 of the statute, they have the right of appeal from that finding.

Now, what notice and opportunity to be heard satisfies the requirements of "due process of law," under the Fourteenth Amendment to the Constitution, is a difficult question. The tendency of federal courts has always been to uphold state legislation in that regard. In the early case of Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616, the court, speaking through Justice Miller, formulated a general guide on the proposition. The court said:

"That whenever by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the

person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections."

In Santa Clara County v. Southern Pacific Ry. Co. (C. C.) 18 Fed. 385, there is an extended and learned discussion of the necessity for notice or opportunity to be heard in ordinary tax and assessment cases. This discussion is by the pens of both Justice Field and Judge Sawyer, eminent jurists. Therein, on page 410, Justice Field, referring to the kind of notice necessary, uses the following language:

"The notice to which we refer need not be a personal citation. It is sufficient if it be given by a law designating the time and place where the parties may contest the justice of the valuation. As a general rule, only a statutory notice is given. The state may designate the kind of notice and the manner in which it shall be given. All that we assert, or have asserted, is that there must be a notice of some kind which will call the attention of the parties to the subject, and inform them when and where they will be permitted to expose any alleged wrong in the valuation of which they may complain. It was with reference to the class of cases where values are to be found upon evidence that we said * * * that notice and opportunity to be heard were essential to the validity of the assessment, and without which the proceedings by which the taxpayer's property was taken from him would not be due process of law."

It is undoubtedly the law at the present time that the notice required to be given a taxpayer, even in assessments against the property, is of the most informal character and the state itself may prescribe the character of the notice to be given. A few illustrations of this might be valuable.

In the case of Corry v. Baltimore, 196 U. S. 466, 25 Sup. Ct. 297, 49 L. Ed. 556, a case wherein the law provided that the stock of shareholders in corporations should be taxed at a valuation to be fixed by an officer of the state of Maryland, it was held, under the decisions of the courts of that state, to be a tax on the stockholders personally and not in rem, on the stock or on the corporation. The law provided that the tax should be paid by the corporation and gave it redress against the shareholders, and notice of the time and place of the assessment was authorized to be given to the corporation only. The question was squarely decided in this case by the Supreme Court that notice to the stockholder was not necessary or re-

quired by the due process clause of the Fourteenth Amendment to the Constitution. The Supreme Court therein say (196 U. S. 478, 25 Sup. Ct. 801, 49 L. Ed. 556):

"A notice to each shareholder is unnecessary, because the corporation represents the shareholders. The officers of the corporation are required by the Code to make an annual return to the state tax commissioner, and upon the information disclosed by that return the valuation of the capital stock is placed each year. If the valuation is not satisfactory, an appeal may be taken by the corporation for the shareholders. An opportunity is thus afforded for the shareholders to be heard through the corporation, and that gratifies all the requirements of law. If each and every shareholder in the great number of companies throughout the state had a right to insist upon a notice before an assessment of his shares could be made, and if each were given a separate right of appeal, it would be simply impossible to fix annually a valuation on shares of capital. The policy of the law is to treat the corporation not merely as tax collector after the tax has been levied, but to deal with it as the representative of the shareholder in respect to the assessment of the shares."

The reasoning in this case is directly in point as to the necessity of notice to each individual beneficiary under our inheritance tax law. Taking the statute as a whole, the statute treats the executor or administrator of the estate of decedent as a representative of the heirs and directs notice of the valuation to be given to such representative of the beneficiaries, or, in other words, it seems to be the policy of the law, taken altogether, to treat the executor or administrator, as a representative of beneficiaries, and that the state should deal with him as such representative in the appraisement. A further provision in the statute provides that, if the beneficiaries are aggrieved by the decision on the valuation or appraisement, they have the right of appeal personally as well as through such representative.

In the case of McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335, a case involving the collection of a license tax, the right to enjoin the collection of any illegal tax was held to constitute sufficient opportunity to be heard, and the requirement of security for the injunction did not destroy the character of due process of law.

In the cases of Lent v. Tillson, 140 U. S. 316, 11 Sup. Ct. 825, 35 L. Ed. 419, and Hodge v. Muscatine County, 196 U. S. 276, 25 Sup. Ct. 237, 49 L. Ed. 477, it is decided that, where

a taxpayer, dissatisfied with an assessment or tax, may review it by proceeding in court, there is due process of law. In the last-named case, the Supreme Court, by Justice Brown, says:

"If the taxpayer be given an opportunity to test the validity of the tax at any time before it is made final, whether the proceedings for review take place before a board having a quasi judicial character, or before a tribunal provided . * * * for the purpose of determining such questions, due process of law is not denied."

In the case of King v. Portland City, 184 U. S. 61, 22 Sup. Ct. 290, 49 L. Ed. 431, the court, affirming the decision of the Supreme Court of Oregon (38 Or. 402, 63 Pac. 2, 55 L. R. A. 812), held, in effect, that if the law give the aggrieved taxpayer the right of appeal, or the right to make application for an abatement or remission of the tax before he has been deprived of his property, or the lien thereon has been irrevocably fixed, there is sufficient opportunity to be heard, and the constitutional provision is satisfied.

In the Kentucky Railroad Tax Cases, 115 U. S. 321, 334, 6 Sup. Ct. 57, 62 (29 L. Ed. 414), the Supreme Court says:

"And if the plaintiffs in error have the constitutional right to such hearing, for which they contend, the statute is properly to be construed so as to recognize and respect it. * * * The Constitution and the statute will be construed together as one law."

In that case the court, referring to the principle that the Constitution and the statute will be construed together as one law, say:

"This was the principle of construction applied by this court, following the decisions of the state court in Neal v. Delaware, 103 U. S. 370, where words, denying the right, were regarded as stricken out of the state Constitution and statutes, by the controlling language of the Constitution of the United States, and in the case of Cooper v. Wandsworth Board of Works, 14 C. B. N. S. 180, in a case where a hearing was deemed essential, it was said by Byles, J., 'that, although there are no positive words in a statute requiring that the party shall be heard, yet the justice of the common law will supply the omissions of the Legislature.' "

It appears that the case of Cooper v. Wandsworth Board of Works, 14 C. B. (N. S.) 180, was a case where the highest court of the state which had passed on the law had construed the law to require notice to be given and an opportunity to be heard.

In a later case, Paulsen v. Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637, a city council, pursuant to its charter, made an order directing an assessment and appointed persons called viewers to make it. ·There was doubt as to whether the charter provided for notice in such cases. The ordinance contained no direction for notice. The viewers, however, gave notice by publication, and reported that they had done so pursuant to the ordinance. Then the city council passed another ordinance, approving the report of the viewers. The Supreme Court said:

"In other words, the council by this latter ordinance approved the construction placed by the viewers upon the first, to the effect that it required notice. It would seem that, when notice was in fact given, notice whose sufficiency is not challenged, a construction put by the council upon the scope and effect of its own ordinance should be entitled to respect in any challenge of the regularity of the proceedings had under that ordinance."

In the case of People ex rel. Simpson v. Wells, 181 N. Y. 252, 73 N. E. 1025, a case decided by the Supreme Court of the state of New York, where the statute did not expressly provide for notice and hearing in assessment proceedings, it was upheld because it contained the words:

"Making all other provisions of law, with respect to taking private property, applicable to proceedings under the act."

It would seem that the United States Supreme Court, from the quotations made, used language indicating that, where the statute fails to provide such hearing as a matter of right, or opportunity to be heard on the question of an assessment, the requirement of hearing as such matter of right will be read into it.

I have given the above quotations from the decisions of the Supreme Court of the United States for the purpose only of showing the reluctance of the federal courts to construe the constitutional provision of due process of law in the ordinary tax laws of the states. Many other federal decisions of like import can be found in the books. The tendency of all ·the judicial decisions is, if possible, to be liberal in the construction and application of all provisions for raising revenue for the states. While I have no doubt that, under the inheritance tax law of this territory, provided for by chapter 60, Session Laws of 1919, the tax imposed is a tax upon the right of suc-

cession, taking effect at the time of devolution, and, being so, it becomes, under the general construction of statutes of like effect, not a tax, but a condition lawfully imposed upon the right of the beneficiaries to take under the intestate laws of the territory or testamentary disposition, and therefore it is not an imposition on any interest in the property of the beneficiaries, and does not come within the inhibition of the Fourteenth Amendment to the Constitution of the United States. I am also satisfied that the notice of appraisement or valuation directed to be given to the executor or administrator satisfies that provision of the Constitution. This notice, given to the executor or administrator, is given to him as representative of the heirs or devisees. The whole scope of the statute views the executor or administrator as such representative. The parties interested have the right of appeal. There is a provision for posting of the inventory made by the executor at least 30 days before the appraisement is made and the classification therein which the heirs or devisees are to take. There is a limitation of the collection of the tax to the property being probated. The appraisement made by the probate judge is not conclusive, and there is a right to the beneficiary to be heard on the final report of the executor or administrator after notice under the general probate laws, and in that the heirs or devisees may test the validity of any appraisement made by the probate judge in proceedings under the statute.

It, however, appears to me that it is in accordance with natural justice that the beneficiaries should receive notice of the date of the appraisement and the findings of the probate judge on such appraisement. This in order to give them an opportunity to exercise their right of appeal from such findings, and hereafter, when any case comes up under the statute, where an appraisement is necessary by the probate judge, I direct that such notice of the time of the appraisement, as well as the notice of the findings of the probate judge, be given in accordance with natural right and justice.

The remaining questions of fact depend upon the construction of the statute. It is a general rule that inheritance tax laws shall be liberally construed to effectuate the purposes of and in favor of the government, and to that end that all transfers of property taking effect on death should be subject to taxation.

As to the question of taxation of personal property situated without the territory, the act provides that the tax is imposed upon the transfer of any property when the transfer is by will or by intestate laws of this territory, from any person dying possessed of the property while a resident of the territory. In this case it is admitted that the testator was a resident of the territory, and that he possessed the property referred to in the appeal, which consisted of certain moneys and bonds in the state of Washington. As was said in Bullen v. Wisconsin, 240 U. S. 631, 36 Sup. Ct. 474, 60 L. Ed. 830:

"As the states where the property is situated * * * generally recognize the law of the domicile as determining the succession, it may be said that, in a practical sense, at least, the law of the domicile is needed to establish the inheritance. Therefore the inheritance may be taxed at the place of domicile, whatever the limitations of power over the specific chattels may be."

See, also, Eidman v. Martinez, 184 U. S. 578, 22 Sup. Ct. 515, 46 L. Ed. 697.

It is well settled that the law is that personal property is sold, transferred, bequeathed by will, and is descendible by inheritance, according to the law of the domicile, and not by that of its situs. In the case of Blackstone v. Miller, 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 439, the question was whether the state of New York had a right to tax the transfer by will of certain personalty situated in that state when the testator had died while domiciled in Illinois, where the whole estate had been taxed. The court said:

"No one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the situs accepts its rules of succession from the law of the domicile, or that by the law of the domicile the chattel is part of a universitas and is taken into account again in the succession tax there."

And further:

"No doubt this power on the part of two states to tax on different and more or less inconsistent principles leads to some hardship. It may be regretted, also, that one and the same state should be seen taxing on the one hand according to the fact of power, and on the other * * * according to the fiction that, in successions after death, 'mobilia sequuntur personam' and domicile governs the whole. But these inconsistencies infringe no rule of constitutional law."

In Re Hodges' Estate, 170 Cal. 492, 150 Pac. 344, L. R. A. 1916A, 837, the Supreme Court of the State of California unanimously decided (I quote from the syllabus) as follows:

"The right of succession to personal property, though in another state, being governed by the law of the state of deceased's domicile, in the absence of any rule to the contrary in the other state, the state of his domicile may require payment of an inheritance tax on such property, and this though it is distributed by the court of the other state on ancillary administration, and will not be brought into the state of his domicile.

"Imposition by both states of an inheritance tax on personal property of deceased in another state than that of his domicile is not double taxation, within the prohibition of the federal Constitution."

The same question has been passed on many times, and the universal ruling has been that, although personal property may be located in another state than that of the domicile of decedent at the time of death, the situs, for the purpose of imposing an inheritance tax, is in the state that was the domicile of the decedent and where the primary administration is had. See People v. Union Trust Co., 255 Ill. 168, 99 N. E. 377, L. R. A. 1915D, 450, Ann. Cas. 1913D, 514, cases cited, and note.

The reasoning in these cases also disposes of the third question raised, that the imposition of the tax on the Central Building bonds is inequitable, unjust, and unconstitutional. They undoubtedly come within the provision of the statute as property possessed by decedent at the time of his death, and are subject to transfer tax and required by the statute to be included therein by the probate judge.

The fourth question, as to whether appraisement should be had at the time of devolution, is answered by the terms of the statute itself. Section 8 of the statute provides that the court shall, in all cases, fix the value of all property transferred as herein provided, as of the date of the death of the decedent. It is imperative on the probate court, therefore, to hear and determine the value of the property transferred as of the date of the death of the decedent transferring the property, and automatically the tax is assessed on that valuation. It may work a hardship in certain cases, as where property has diminished in value; but generally it will be to the advantage of the beneficiary, as no interest on stocks or bonds, or increase in their value, or increase in the value of real estate, after the time of death, can be taken into consideration in making the valuation.

An examination of this case discloses that on the 25th day of February, 1921, the probate judge fixed the date of the appraisement of the estate for the 28th day of February—three days subsequent. It also appears that an order was made for the appraisement on October 15, 1921. This last order does not appear in the transcript. If it was vacated, so as to determine the objections offered by the executor, the fact of such vacation should appear. If the matter of the appraisement was continued to a date certain, that should appear, and the original order attached to the papers. If the order of February 25th was a continuance of the hearing on the appraisement, in pursuance of the original order of continuance, that should appear therein. If it was a refixing of the date of appraisement, without reference to the original order, it was insufficient under the statute, which provides for at least 30 days' notice. I have not gone specifically into the items or the manner of making the appraisement, because, from the nature of the appeal and the exceptions, I have considered only the exceptions taken, but would say, in reference to the manner of appraisement under section 2 of the act, which provides that the tax shall be computed only upon the excess of the exemptions, that it would be the duty of the appraiser to first deduct the exemptions the beneficiary may be entitled to under the law, and then assess the tax up to the valuation of $15,000 on the primary rate, and then on the valuation over $15,000 for the secondary and other rates.

The entire amount, whether exempt or not, is to be considered for the purpose of taxation. The exemption is not to be deducted from the entire gift, but the exemption must be deducted from the primary rate, as, for example, the exemption to the widow is $10,000, and the primary rate is $15,000, and the rate of taxation is 1 per cent. The tax on the primary rate of $15,000 would be $150; the tax for the secondary rate would be on the amount of the estate distributed to the beneficiary, over $15,000 and up to $30,000, at 2 per cent., and on property in excess of $30,000 and up to $50,000, 2½ per cent. See In re Timken's Estate, 158 Cal. 51, 109 Pac. 608, 609.

Should counsel request a review further of the valuation and assessment, it will be so ordered.